Keasler, J., Delivered the Opinion of the Court as To Parts I, II, III, and V, in which Keller, P.J., and Yeary, Keel, and Walker, JJ., joined, and filed an opinion as to Part IV, in which Keller, P.J., and Yeary and Keel, JJ., joined.
In enacting the current form of Penal Code Section 22.011(f),[1] the Legislature apparently wished to provide higher penalties for polygamists "who sexually assault their purported spouses."[2] But the resulting statute has the potentially unintended effect of punishing married offenders more harshly than unmarried offenders. Does the State have a rational interest in enforcing this scheme? We believe it does, specifically as applied to cases in which a married adult sexually abuses a child. We reverse.
I. FACTS
The opinion below adequately conveys the details of the offense.[3] The essential facts are as follows.
"[O]ver the course of approximately one year," Russell Estes had an ongoing sexual relationship with K.A., a then-fourteen-year-old girl.[4] "They had sexual intercourse on multiple occasions and engaged in other sexual acts with each other."[5] During that span, Estes was legally married to someone else. So, in addition to charging Estes with sexual assault of a child, ordinarily a second-degree felony, the State also alleged that K.A. was a person "whom the defendant was prohibited from marrying or purporting to marry or with whom the defendant was prohibited from living under the appearance of being married[.]"[6] This additional fact, if *695 proven true, would subject Estes to first-degree-felony punishment under Penal Code Section 22.011(f) :
An offense under [ Section 22.011, describing the offense of "Sexual Assault,"] is a felony of the second degree, except that [it] is a felony of the first degree if the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01 [describing the offense of "Bigamy"].[7]
Estes was also charged with various counts of indecency with a child.[8]
A. Trial Court Proceedings
Estes filed a pre-trial motion to quash the child-sex-assault counts within the indictment, in which he objected to what he called the "[b]igamy element of this allegation[.]"[9] Specifically, Estes argued that Section 22.011(f)"is unconstitutional both facially and as applied to [him] because it treats married people more harshly than ... unmarried people in violation of the Due Process and Equal Protection clauses of the United States and Texas Constitutions."[10] When this motion was denied, Estes asked for, and was granted, a running objection along these lines.
As relevant here, Estes was ultimately found guilty of all five counts of sexual assault of a child. In a single special issue, the jury also found "that [K.A.] was a person whom [Estes] was prohibited from marrying or purporting to marry or with whom [Estes] was prohibited from living under the appearance of being married,"[11] thereby triggering the Section 22.011(f) enhancement. Within the first-degree-felony punishment range, Estes was sentenced to 12 years' confinement on each count of sexual assault of a child.
B. Appeal
Before the Second Court of Appeals, Estes re-urged his contention that Section 22.011(f) is unconstitutional as applied to him. Estes primarily argued that, because this particular "application of Section 22.011(f)... impinges on his fundamental right to marry, the constitutionality of the statute should be reviewed under the 'strict scrutiny' standard."[12] "However," Estes maintained, "even if reviewed under the more deferential rational-basis test, the law is still unconstitutional as applied" to him because the Section 22.011(f) enhancement "was intended to apply only in cases where the offense of bigamy or certain categories of bigamy are involved."[13]
In response to Estes's claims, the State advanced two possible rational bases for upholding the constitutionality of Section 22.011(f) in this case. The State argued that this application of Section 22.011(f) can be rationally understood as a method of "preventing the sexual exploitation of children by those who would use the 'cloak of marriage' " to gain access to potential victims.[14] The State also proposed that this application of Section 22.011(f) advances Texas's "legitimate interest in protecting" and "nourish[ing] the union of marriage."[15]
*696 The court of appeals rejected both of these rational bases. Regarding the State's "cloak of marriage" argument, the court found "nothing in the record" to support the claim "that a defendant's status of being married creates greater opportunities and access for sexually assaulting children."[16] The court also declared that it could not "fathom that the legislature intend[ed] to resurrect" the notion of criminalizing adultery "through the language contained in section 22.011(f)."[17] Finally, the court of appeals faulted the State for advocating a reading of the statute that, in the court of appeals' judgment, would result in an "extraordinarily broad" number of potential applications.[18] The court of appeals ultimately concluded that, "under the circumstances of this case and as applied to appellant," Section 22.011(f)"violates equal protection because it penalizes him differently than a similarly situated defendant without a rational basis for doing so."[19] The court went on to affirm various other aspects of his convictions for sexual assault of a child "as second-degree felonies" and remanded those charges "to the trial court for a new trial on punishment."[20] Both parties petitioned this Court for discretionary review.
C. Discretionary Review
We granted the State's petition for discretionary review to reexamine the court of appeals' conclusion that there is no rational basis for the State's applying the Section 22.011(f)"bigamy" enhancement to the conduct of a monogamous person.[21]
We also granted Estes's petition for discretionary review to determine whether his equal-protection claim should be "reviewed under strict scrutiny."[22] However, because the court of appeals concluded that this particular application of Section 22.011(f) fails even the rational-basis test, it explicitly declined to consider Estes's arguments that strict scrutiny should apply.[23] "In these circumstances, [an appellant's] arguments for heightened scrutiny are best left open for consideration by the Court of Appeals on remand."[24] Especially when addressing the constitutionality of a particular statutory provision, a reviewing court should not "anticipate a question of constitutional law in advance of the necessity of deciding it"; neither should it "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be *697 applied."[25] Both of these canons of judicial restraint would be compromised were we to reverse the court of appeals on an issue that it expressly declined to address.[26] We therefore dismiss, as improvidently granted, Estes's first issue on discretionary review.[27]
Furthermore, based on our resolution of the State's sole ground for review, we need not reach Estes's second issue, in which he claims that it was "error for the Court of Appeals to affirm Appellant's sexual assault convictions as second-degree felonies ... rather than order the prosecution of Appellant dismissed."[28] We turn now to the State's ground for review.
II. LAW
A. "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."[29]
The United States Supreme Court has interpreted the Fourteenth Amendment's Equal Protection Clause as "essentially a direction that all persons similarly situated should be treated alike."[30] Resolving a claim that some state action has resulted in the law's unequal application begins with the reviewing court deciding which of the "devised standards for determining the validity" of the complained-of state action should apply.[31] The default, "general rule" or "standard" is that state action is "presumed to be valid" and will be upheld if it is but "rationally related to a legitimate state interest."[32] This general rule "gives way, however," when a state action either "classifies by race, alienage, or national origin,"[33] or "impinge[s] on personal rights protected by the Constitution."[34] Under these circumstances, the state action is subjected to "strict scrutiny," and will be sustained only if it is "suitably tailored to serve a compelling state interest."[35]
B. "[A] rational means to serve a legitimate end."[36]
How a reviewing court applies these constitutional standards depends upon the type of constitutional challenge being made. In a "facial" constitutional challenge, the claimant asserts that the complained-of law is unconstitutional "on its face," meaning that it operates unconstitutionally *698 in all of its potential applications.[37] Conversely, in an as-applied challenge, the claimant "concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances."[38] Under either type of challenge, the reviewing court begins with the presumption that the Legislature acted both rationally and validly in enacting the law under review.[39]
We have said that resolving an as-applied challenge "requires a recourse to evidence."[40] By dint of the presumption of constitutionality, the challenger, and no other party, bears the burden of producing this evidence.[41] He must do so by specifically demonstrating that the law in question is unconstitutional as "applied to him; that it may be unconstitutional as to others is not sufficient (or even relevant)."[42] Likewise, it will not suffice for him merely to introduce evidence that the State's "conceived reason for the challenged distinction" is not what "actually motivated the legislature" in passing the law that it did.[43] Indeed, this consideration is "entirely irrelevant for constitutional purposes."[44] "In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."[45] Instead, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker."[46] This is a heavy burden.[47]
Above all, a court should spurn any attempt to turn rational-basis review into a debate over the wisdom, eloquence, or efficacy of the law in question.[48] As its name would suggest, rational-basis review should focus solely on the rationality of the law or state action. Should we determine that the State has invoked a legitimate governmental purpose and, in enforcing its law, has charted a course that is "rationally related" to it, "our inquiry is at an end."[49]
*699 III. ANALYSIS
We have interpreted Section 22.011(f) as essentially requiring proof "that the defendant committed sexual assault and that, if he were to marry or claim to marry his victim, or to live with the victim under the appearance of being married, then he would be guilty of bigamy."[50] In State v. Rosseau , we rejected a facial challenge to the constitutionality of Section 22.011(f), noting that "it has at least one valid application: the punishment of bigamists who sexually assault their purported spouses."[51] In this narrower, as-applied challenge, Estes contends that, while Section 22.011(f) might enjoy constitutional validity in other settings, it is unconstitutional "as applied" to him because "it treats married persons and unmarried persons differently and in effect punishes him for being married."[52] To that contention, we now turn.
A. The State has a legitimate interest in deterring, preventing, and punishing the sexual exploitation of children.
The State argues that Section 22.011(f) advances the "legitimate interest" the Texas Legislature has in "protecting the well-being of children" by "preventing their sexual exploitation."[53] Specifically, the State says that, as applied to Estes, the statute protects children against sexual predators "who would use the 'cloak of marriage' to gain access to children whose parents might be less cautious in sending their children to homes with married parents."[54] So the State invokes what the Supreme Court has referred to as the "compelling" interest a government has in "safeguarding the physical and psychological well-being of ... minor[s]."[55]
May the State plausibly invoke this interest to justify its use of the "bigamy" enhancement in this case? After all, some extra-textual indicators of the legislative intent behind the Section 22.011(f) enhancement suggest that it was aimed specifically toward protecting those who had suffered "from the blight of bigamy and polygamy[.]"[56] And the literal text of Section 22.011(f) is not explicitly directed towards sexual assaults involving children. Under the literal text, anyone who engages in sexually assaultive, would-be-bigamous conduct may trigger the enhancement, whether his acts are inflicted upon a child or not.[57]
Despite these indications to the contrary, the State may still rely upon its general interest in protecting children to justify its use of the enhancement in this case. We have previously acknowledged that the literal language of Section 22.011(f) accomplishes more than merely punishing actual instances of bigamy.[58] And, in the same case, we noted that " Section 22.011(f) was [amended] as part of a senate bill that was broadly aimed at providing more protection to children and the elderly."[59] The State's use of the enhancement to deter and punish conduct such as *700 Estes's at the very least implicates this broader goal. Indeed, the State's construction arguably has the virtue of advancing both the narrow goal of deterring sexually-assaultive polygamous practices and the broader goal of providing "more protection to children" from sexually exploitative practices generally.[60]
Then again, any debate over the "real" legislative intent behind Section 22.011(f) is, to some extent, beside the point, at least in the context of an as-applied constitutional challenge. The Legislature passed, and the Governor signed into law, a bill whose literal language is plainly broad enough to cover Estes's conduct in this case.[61] In other settings, we have said that the "literal text" of a statute "is the only definitive evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law."[62] The competing counter-indicia of legislative intent identified above are prime examples of why this rule of statutory construction has withstood the test of time, and why it makes good sense in this context, as well.
In any event, we need not concern ourselves with whether the Legislature truly "intended" for the law to be used in the fashion employed by the State in this case,[63] for "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."[64] Our job is simply to determine whether, assuming the Legislature intended to pass precisely the law we have before us, the State's use of that law in Estes's case is rationally related to the compelling interest the State has in protecting children from sexual abuse. For the following reasons, we conclude that it is.
B. Section 22.011(f), as applied here, is rationally related to the State's interest in protecting children from sexual exploitation.
Rejecting the notion that the State's proposed use of Section 22.011(f) is rationally related to the goal of protecting children from sexual abuse, the court of appeals made two observations. First, the court of appeals opined that the "evidence in this case ... does not show that appellant used his marital status to gain the trust of [K.A.] or her parents."[65] Second, it could find no evidence in the record to support "the general proposition that a defendant's status of being married creates greater opportunities and access for sexually assaulting children."[66]
We disagree with the court of appeals' approach to this question. In each of these observations, the court of appeals pointed to a silent or underdeveloped record in support of its conclusion that Section 22.011(f) is unconstitutional as applied to Estes. In so doing, it seemingly shifted the burden to the State, either to produce evidence that Estes "used his marital status *701 to gain the trust of [K.A.]," or to substantiate the assertion that marriage "creates greater opportunities and access for sexually assaulting children."[67] If so, the court of appeals ran afoul of the rule that the constitutional challenger bears the burden of proving that the law is unconstitutional as applied to him. "A State ... has no obligation to produce evidence to sustain the rationality of a statutory classification."[68] It was Estes's burden to rebut, with credible evidence, the notion that married men have an easier time gaining would-be victims and parents' trust. It fell upon him to show that this assumption "could not reasonably be conceived to be true."[69] Had Estes put on evidence to show that any "speculation" by the Legislature in this regard would have been objectively "[ir]rational," both the trial court and the court of appeals would at least be in a better position to evaluate the strength of Estes's arguments.[70]
Then again, though we discount no possibility, it would seem that this is a showing Estes was unlikely to make even if he had presented any evidence to this effect. As the Supreme Court recently explained, there is an indelible connection in our society between the union of marriage and the ideas of "family,"[71] "home,"[72] "stability,"[73] "security, safe haven"[74] -and, indeed, "children."[75] These connections were not conjured from thin air; they are deeply embedded in the public's time-honored understanding of what "marriage" entails.[76] Just as the Supreme Court did, the Legislature could rationally conclude that to be a married man or woman is to project the kind of "stability" and "safe haven" that many children find comfort in.[77] It could rationally conclude that one who has solemnly sworn to "forsak[e] all others"[78] might be perceived, at least by some parents, as being less likely to make sexual advances upon their children. And it could rationally see fit to declare that one who would enjoy this marital perception of trustworthiness will be punished all the more severely if he uses it to groom, and then sexually abuse, a child.
*702 We express no opinion whether we agree with any legislative assumption that married people are more trustworthy around children than their unmarried counterparts. Regrettably, men like Estes make such a belief difficult to hold. But, paradoxically enough, Estes's case also serves as a reminder that the public perception in this regard is all too real.[79] We are simply unwilling, at least on this record, to discard as "irrational" the idea that marriage bestows upon its participants a certain aura of trustworthiness, specifically in regard to children.[80] Nor do we think the Constitution precludes our Legislature from reserving, for deterrent purposes, a higher degree of punishment for those who would defile that trust by using it to sexually assault a child.
IV. COUNTER-ARGUMENTS
Judge Newell's concurring and dissenting opinion posits at least three different arguments as to why he disagrees with our approach. According to Judge Newell, (1) the rationale we adopt today is, essentially, that "marriage is really good and crimes against children are really bad[.]"[81] He also (2) construes our discussion of legislative intent as a finding that "the legislative intent behind the statute was really about punishing sexual assault committed under a 'cloak of marriage.' "[82] Instead, he believes that, (3) to conclude that Section 22.011(f) survives rational-basis review, one need only observe that the distinction drawn within the statutory language itself "between married and unmarried offenders ... is at least rationally related to" the state's interest in prohibiting bigamy and polygamy.[83] We address each argument in turn.
A. Judge Newell mischaracterizes our rationale.
Judge Newell oversimplifies our argument when he describes it as proceeding along the lines of, "marriage is really good and crimes against children are really bad[.]"[84] Although we would almost certainly agree with each of these sentiments from a policy perspective,[85] we need not rely upon either of them in reaching our ultimate result. Instead, our analysis focuses exclusively and appropriately on the reasonableness of a particular legislative assumption: that married people have an easier time gaining the trust of children and parents than unmarried persons. The Legislature could rationally conclude that those who are inclined to make sexual advances upon children, and whose marital status would make the commission of a crime in satisfaction of those urges incrementally easier to consummate, may need an additional deterrent to further dissuade them from committing such a crime. And, *703 in the absence of evidence to the contrary, it could reasonably conclude that increasing the range of punishment in these circumstances is appropriately suited to that task.
B. We need not-and do not-decide what the "true" legislative intent behind Section 22.011(f) was.
Judge Newell evidently thinks that, when we say that the State may invoke its general interest in preventing the sexual exploitation of children in defending Section 22.011(f) against Estes's constitutional attack, we necessarily hold that the Legislature had this precise interest in mind when it enacted the Section 22.011(f) enhancement.[86] But we are not making any claims about what the Legislature "really" intended to accomplish in amending Section 22.011(f).[87] This is because, consistent with Supreme Court precedent,[88] we consider any debate about the Legislature's "true" intent to be irrelevant to the constitutional question presented in this case.
Next, Judge Newell contends that we misapply F.C.C. v. Beach Communications, Inc. because, according to Judge Newell, Beach involved a record that was utterly silent with respect to legislative intent-whereas in this case, he accuses us of "substituting [our] own policy preferences for th[ose] of the Legislature."[89] But Judge Newell's argument proceeds from a premise that is demonstrably false. It would be inaccurate to say that the regulatory provision at issue in Beach was wholly unsupported by extra-textual indicia of legislative intent. To the contrary, the intermediate appellate litigation leading up to the Supreme Court's opinion in Beach discussed the relevant legislative history in some detail.[90] The relevance of Beach , then, is not that a "reviewing court [is] authorized to engage in rational speculation" only when "it ha[s] no other information regarding the legislative intent."[91] Instead, it is that a reviewing court may engage in "rational speculation" to uphold the constitutionality of a statute even when the government's proffered rational basis finds no support within the legislative history.[92] This is why, in Beach , the Supreme Court found that the regulation in question was supported by at least two conceivable rational bases.[93]
*704 Judge Newell also suggests that our discussion of legislative history is somehow inconsistent with the Court's opinion in Arteaga v. State .[94] But we do not "hold in this case that the legislative intent behind the statute was really about punishing sexual assault committed under a 'cloak of marriage[.]' "[95] We expressly decide that, even if this proposition is debatable, it is of no consequence to the proper resolution of this case. This holding in no way conflicts with Arteaga 's observation that the Legislature's primary aim in amending Section 22.011(f) was diminishing the "blight of bigamy and polygamy."[96]
C. Judge Newell's approach would nullify as-applied constitutional challenges.
Judge Newell alternatively proposes to resolve Estes's constitutional challenge by focusing exclusively upon the classification drawn by the statutory language itself.[97] His approach essentially has two steps: First, identify a legitimate interest advanced by the statute, making sure that it is an interest that is actually contemplated by the relevant legislative history;[98] and then, decide whether the statutory language the Legislature adopted in furtherance of that interest is "rationally related to" it.[99] Applying this approach, Judge Newell cites Rosseau for the proposition that "there is at least a legitimate state interest in prohibiting bigamous or polygamous relationships and sexual assault pursuant to such relationships,"[100] and then argues that this interest "alone provides a rational basis for drawing the distinction between married and unmarried offenders within the sexual assault statute."[101] His analysis does not take into account the particular circumstances of the defendant against whom the statute was applied.[102] Instead, he focuses exclusively on the classification drawn within the statute.[103]
At the outset, it is worth noting that Judge Newell's approach seeks to answer *705 something that is "solely and entirely a legal question"[104] -whether the literal text of the statute is reasonably related to its apparent aim. The particular facts of the case, and circumstances of the defendant, are tellingly irrelevant to this question. Thus, by "consider[ing] only the text of the measure itself, and not its application to the particular circumstances of [the] individual[,]"[105] Judge Newell is functionally conducting a facial constitutional analysis-one that this Court already undertook in Rosseau .[106] But Rosseau itself acknowledged that "[a]rguments pertaining to an as-applied challenge ... must be reserved for another day."[107] And if Judge Newell is correct that an as-applied challenge may be resolved simply by identifying a previously-acknowledged State interest, regardless of whether it is implicated in the present case,[108] and then measuring the literal statutory language against that interest, upholding a statute's constitutionality on facial grounds would necessitate that it be upheld as to every conceivable as-applied ground, as well.
It is well-settled that "a statute may be valid as applied to one set of facts and invalid as applied to a different set of facts[.]"[109] So a reviewing court may not resolve an as-applied constitutional challenge solely by comparing the language of the statute to an un-implicated governmental interest and then asking whether the former is "rationally related to" the latter.[110] To hold otherwise would be to misapprehend the thrust of Estes's argument. Estes does not contend that the literal language of Section 22.011(f) is insufficiently "related to" the goal of curbing polygamous practices;[111] he asserts that this particular "application" of the statute does not further that goal.[112] Our rejoinder is simply that, even if this is so, "any" legitimate state basis will suffice to uphold the constitutionality of the challenged application-even if the State's proffered basis is not specifically mentioned within the relevant legislative history-so long as the challenged application is "rationally related to" that basis.
As-applied review must take into account the "particular facts and circumstances" of the litigant,[113] for without such evidence, a reviewing court cannot appropriately discern the classification that is *706 being challenged, and the circumstances under which the State asserts an interest in enforcing that classification. The particular facts and circumstances that inform-and limit-our ruling today are that Estes is a married man convicted of sexually assaulting a child. We express no opinion whether other kinds of challenges, if raised, would be more or less likely to succeed than the one presented here; we simply disapprove of any as-applied analytic approach in which it would be unnecessary to consider the individual facts and circumstances of the case under review.
V. CONCLUSION
We reverse the judgment of the court of appeals and remand the case for that court to analyze Estes's remaining constitutional claims.[114]
Newell, J., filed an opinion concurring in part and dissenting in part, in which Hervey and Richardson, JJ., joined. Alcala, J., dissented.
Newell, J., filed an opinion concurring in part and dissenting in part in which Hervey and Richardson JJ., joined.
Sexual assault is usually a second-degree felony. The text of Penal Code Section 22.011(f), as it enhances the offense of sexual assault, reads as follows:
(f) An offense under this section is a felony of the second degree, except that an offense under this section is a felony in the first degree if the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01.[1]
Appellant argues that this statute differentiates between married and unmarried sex offenders in violation of the Equal Protection Clause. Appellant is incorrect. The classification at issue in this statute is rationally related to enforcing the prohibition against bigamy and sexual assault committed pursuant to a bigamous relationship. As such, it does not violate the Equal Protection Clause. Consequently, I concur in the Court's conclusion, though I disagree with its reasoning. However, because the Court chooses to remand the case to the court of appeals rather than address the appropriate standard of review for Appellant's equal protection claim, I respectfully dissent.
I. Equal Protection Challenges
The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws;" it is a direction that all persons similarly situated should be treated alike.[2] In determining whether a criminal statute violates the Equal Protection Clause, we begin with the presumption that the purpose of the statute is constitutional.[3] To *707 prevail on an equal protection claim, the party complaining must establish two elements. First, the party must show he was treated differently than other similarly situated individuals due to a particular legislative classification.[4] Second, the party must prove that the statutory classification is not rationally related to a legitimate state interest.[5] A statute must be upheld unless the State relies on a classification "whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."[6]
This general deference to legislative classifications gives way if a statute contains a classification that impinges on the short list of personal rights protected by the Constitution or a suspect classification, such as race, alienage, or national origin.[7] A right is fundamental if it is explicitly or implicitly guaranteed by the Constitution.[8] And a suspect class is comprised of members that possess either an "immutable characteristic determined solely by the accident of birth,"[9] or have been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."[10] In those situations, a statute is subject to strict scrutiny and will be sustained only if it is narrowly tailored to serve a compelling state interest.[11]
Simply put, "in assessing an equal protection challenge, a court is called upon only to measure the basic validity of a legislative classification."[12] When some other independent right is not at stake and there is no reason to infer antipathy, it is presumed that even improvident decisions will eventually be rectified by the democratic process.[13] As the United States Supreme *708 Court explained in Dandridge v. Williams :
[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations-illogical, it may be, and unscientific. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.[14]
The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility.[15]
A. The Legislative Classification Was Rationally Related to a Legitimate State Interest
In this case, the problem with the court of appeals analysis lay in the focus upon whether there was a rational basis to elevate Appellant's punishment in this case, rather than upon whether there was a rational basis for the Legislature to draw a distinction between married and unmarried defendants in the statute.[16] The court of appeals set out the standard this way:
"Generally, to prevail on an equal protection claim, the party complaining must establish two elements: (1) the party was treated differently than other similarly situated parties, and (2) the differential treatment does not have a rational governmental basis."[17]
Later, it framed the inquiry as a determination of "whether appellant's disparate treatment on account of his status of being married has at least a rational governmental basis."[18] But a proper application of the standard does not focus upon whether there is a rational basis for the treatment of the defendant, it focuses upon whether the Legislature had a rational basis for drawing a classification in the statute. This distinction is subtle, but significant.
By focusing upon whether the treatment at issue was rational, rather than whether a legislative classification was rational, the court of appeals effectively engrafted the "narrowly tailored" requirement of strict-scrutiny review onto rational-basis review. Under rational-basis review, courts must accept that a particular legislative classification will affect certain groups unevenly and these uneven effects upon particular groups within a class are ordinarily of no constitutional concern.[19] Rational-basis review does not require invalidation of a particular classification simply because the classification at issue is broader than it needs to be.[20] The question of overreach has no place in an equal protection analysis where the First Amendment is not implicated.[21]
*709 Yet the court of appeals essentially required that the statute be narrowly tailored to the State's legitimate interest in punishing bigamous or polygamous relationships. The court of appeals acknowledged that the legislative history of the amendment to Section 22.011(f) reveals that the legislature was motivated by a desire to curb sexual assaults committed in bigamous or polygamous relationships, including against children, under the guise of religious freedom.[22] The State conceded as much.[23] Rather than consider whether this motivation provided a rational basis for the Legislature to draw the distinction between married and unmarried defendants, the court simply held that the classification was not rational because this case did not involve a bigamous or polygamous relationship.[24] In other words, the court of appeals held that the classification at issue was not rationally related to a legitimate state interest because the classification was not narrowly tailored to apply to only bigamous or polygamous relationships.
We have already held that Section 22.011(f) would apply to a sexual assault pursuant to a bigamous relationship.[25] And we have held that this is a valid application of the statute.[26] By doing so, we implicitly held that there is at least a legitimate state interest in prohibiting bigamous or polygamous relationships and sexual assault pursuant to such relationships. Indeed, as the Supreme Court of Utah has observed when considering the constitutionality of its own bigamy statute, prohibitions against bigamy and polygamy serve the State's interest in protecting vulnerable individuals from exploitation and abuse.[27]
The practice of polygamy, in particular, often coincides with crimes targeting women and children. Crimes not unusually attendant to the practice of polygamy include incest, sexual assault, statutory rape, and failure to pay child support. See Richard A. Vasquez, Note, The Practice of Polygamy: Legitimate Free Exercise of Religion or Legitimate Public Menace? Revisiting Reynolds in Light of Modern Constitutional Jurisprudence , 5 N.Y.U. J. Legis. & Pub. Pol'y 225, 239-45 (2001). Moreover, the closed nature of polygamous communities makes obtaining evidence of and prosecuting these crimes challenging. See Id. at 243 ("Given the highly private nature of sexual abuse and the self-imposed isolation of polygamous communities, prosecution may well prove impossible. This wall of silence may present a compelling justification for criminalizing the act of polygamy, prosecuting offenders, and effectively breaking down the wall that provides a favorable environment in which crimes of physical and sexual abuse can thrive.").[28]
*710 This alone provides a rational basis for drawing the distinction between married and unmarried offenders within the sexual assault statute. Indeed, without such a legislative classification, the statute would not be effective at its intended purpose of punishing more severely an individual who commits sexual assault pursuant to a bigamous or polygamous relationship.[29] When dealing with the offenses of bigamy or polygamy, drawing a line between married and unmarried offenders is inevitable.
Far from arbitrary, irrational, or attenuated from its asserted goal, the distinction between married and unmarried offenders flows logically from the intended purpose of the statute. Though the statute is written more broadly than necessary to accomplish its intended goal, the distinction between married and unmarried offenders underlying Section 22.011(f) is at least rationally related to that goal. The Constitution does not require that the statute be more narrowly tailored absent a showing that Appellant is a member of a suspect class or that the statute significantly interferes with a fundamental right. So, while I ultimately agree with the Court that the legislative classification is rationally related to a legitimate state interest, I disagree with the Court's chosen path to that result.
B. The Court's Rational-Basis Analysis is Unnecessarily Broad
According to the Court, the classification at issue survives rational-basis review because marriage is really good and crimes against children are really bad, so crimes against children committed by married people are worse than crimes committed by unmarried people.[30] As discussed above, adopting this argument is unnecessary and focuses on the wrong question. However, I write separately to explain further implications of this approach.
First, the observation that the State has at least a legitimate interest in protecting children is emotionally satisfying, but conceptually unhelpful. A variant of the same observation could be made about every offense in the Penal Code. Of course the State has a legitimate interest in punishing crime and setting punishment classifications.[31] However, a determination by the Legislature of what constitutes the proper exercise of police power is not final or conclusive.[32] The State's interest in protecting children does not explain why a legislative distinction between married and unmarried defendants is rational.[33] It only serves to make the State's argument supporting that distinction look more substantial.
*711 Second, engaging in "rational speculation" regarding legislative intent by ignoring clear indications of that legislative intent could undermine the rationale behind rational-basis review. Reviewing courts get their license to speculate from the United States Supreme Court decision in FCC v. Beach Communications, Inc. In that case, Satellite Master antenna operators brought suit against the Federal Communications Commission arguing that the classification made between cable facilities in the Cable Communications Policy Act of 1984 violated equal protection.[34] At issue was whether there was a rational basis to justify the distinction made between cable facilities that serve separately owned and managed buildings and those that serve one or more buildings under common ownership or management.[35] The Supreme Court ultimately held that there was a rational basis for the distinction.[36] But it was how they got there that concerns this case.
The Court of Appeals had held in Beach that there was no predominate rationale for the distinction at issue "on the record" and so it had remanded the case for more evidence before striking down the legislative classification.[37] In the remand order, the Court of Appeals had directed the FCC to provide "additional legislative facts" to justify the distinction.[38] The Court of Appeals ultimately struck down the classification after receiving a report generated by the FCC in response to the Court of Appeals' order.[39]
The Supreme Court noted that those attacking the rationality of a legislative classification have the burden to negate every conceivable basis which might support it.[40] Moreover, the Court held that the actual motivation for the challenged distinction is entirely irrelevant for constitutional purposes because the Legislature is not required to articulate its reasons for enacting a statute.[41] According to the Court, the "absence" of legislative facts has no significance in a rational basis analysis, so "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."[42]
The Supreme Court characterized this as an act of judicial restraint because it deferred to the legislative prerogative to create classifications.[43] According to the Court, "Defining the class of persons subject to a regulatory requirement-much like classifying governmental beneficiaries-'inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.' "[44] In short, in the absence of any indication as to what *712 the Legislature's predominate rationale was for drawing a particular distinction, courts must defer to the legislative choice and uphold it under any conceivable basis to avoid substituting its own policy preferences for those of the Legislature.
That's not quite what's going on in this case, though. Here, there is some indication, both in the text of the statute and in the legislative history, as to why the Legislature drew the distinction it did. As we have said, the literal text of the statute "is the only definitive evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law."[45] As set out above, the text of Penal Code Section 22.011(f), as it enhances the offense of sexual assault, reads as follows:
(f) An offense under this section is a felony of the second degree, except that an offense under this section is a felony in the first degree if the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01.[46]
Section 25.01 of the Penal Code sets out the offense of bigamy.[47] We have already interpreted this reference by Section 22.011(f) to Section 25.01 as incorporating all six bigamy prohibitions found in the bigamy statute.[48] We also determined that this reference to Section 25.01 indicates that the Legislature intended for the State to prove facts constituting bigamy (as opposed to some other prohibition against marriage) whenever it alleges that the defendant committed sexual assault and the State invokes Section 22.011(f).[49] Even though the text is not limited to the commission of sexual assault pursuant to a bigamous relationship, it nevertheless provides a clear indication of "what the legislature had in mind" when it passed this statute: enhanced punishment for sexual assault committed in the course of a bigamous relationship.
Indeed, the Legislature did not draft Section 22.011(f) to simply enhance punishment upon a showing of marriage. By way of illustration, the text of the statute does not read like this:
(f) An offense under this section is a felony of the second degree, except that an offense under this section is a felony of the first degree if the defendant was married at the time he committed the offense.
Our Legislature tied the punishment enhancement to the offense of bigamy for a reason. Yet, the Court relies upon Beach to speculate about what the Legislature really meant to say despite text that indicates a more narrow purpose.
Similarly, we have already examined the legislative history behind this section and determined that the legislative intent behind the amendment of this section was directed at protecting children from the blight of bigamy and polygamy.
Section 22.011(f) was created as part of a senate bill that was broadly aimed at providing more protection to children and the elderly. Tex. S.B. 6, 79th Leg., R.S. (2005). However, the substance of the amendment regarding bigamy actually came from a house bill authored by Representative Hilderbran. Tex. H.B. 3006, 79th Leg., R.S. (2005). He testified that his bill was directed at bigamy, polygamy, and the problems associated with those practices. Hearing on Tex.
*713 H.B. 3006 Before the House Committee on Juvenile Justice & Family Issues, 79th Leg., R.S. (Apr. 3, 2005) (Statement of Representative Hildebran). He also specifically identified "The Fundamentalist Church of Jesus Christ of Latter Day Saints" (FCLDS) and said that he proposed the legislation after it was brought to his attention that the FCLDS was moving its operations to Texas because the state had weak laws prohibiting bigamy and polygamy. Id. And, although Representative Hildebran's house bill failed to pass, he offered the substance of his bill as an amendment to Senate Bill 6, which did pass.[50]
We relied upon this history when determining that this amendment was not intended as an increased punishment for other forms of prohibited marriage. It is true that we did not construe Section 22.011(f) as limited to situations involving bigamy or polygamy. However, we cannot hold in this case that the legislative intent behind the statute was really about punishing sexual assault committed under a "cloak of marriage" and remain consistent with our legislative analysis in Arteaga .
So, the situation in this case differs from FCC v. Beach . There, the reviewing court was authorized to engage in rational speculation because it had no other information regarding the legislative intent. Here, we have some indication of the legislative intent behind the passage of this amendment, yet the Court nevertheless posits a different rationale for the statute. This threatens to turn Beach on its head. It is hard to see how a reviewing court exercises judicial restraint and deference by substituting its own policy preferences for that of the Legislature.
Perhaps the United States Supreme Court envisioned that Beach should be applied to situations like this, but it is unnecessary to find out. In this case, we have indications from our Legislature in the text of the statute and the legislative history regarding its motivation for passing this statutory section. The purpose behind the passage of this statute already provides a rational basis for upholding the challenged classification. There is no need to resort to additional justifications.
Further, the Court's rationale for supporting this enhancement can be re-purposed to justify a marriage enhancement for virtually any criminal offense. As the United States Supreme Court has observed, marriage as an institution is at the center of so many facets of the legal and social order.
Indeed, while States are in general free to vary the benefits they confer on all married couples, they have throughout our history made marriage the basis for an expanding list of governmental rights, benefits, and responsibilities. These aspects of marital status include: taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical decision making authority; adoption rights; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; and child custody, support, and visitation rules. Valid marriage under state law is also a significant status for over a thousand provisions of federal law.[51]
*714 Given this, an argument could be made that classifications based upon marriage always survive rational-basis review absent a concern that the classification significantly interferes with the right to marry.[52] We need not reach that determination in this case because is unnecessary to do so. As discussed above, the statute is rationally related to a legitimate governmental interest in punishing bigamy or polygamy and sexual assault pursuant to bigamous or polygamous relationships. It is unnecessary to go further than that in our holding.
C. As-Applied vs. Facial Challenges
The Court argues that focusing upon the legislative classification at issue renders it impossible to have an as-applied challenge to a statute based upon equal protection. But historically, this distinction has not been employed when considering Equal Protection challenges.[53] The distinction between as-applied and facial constitutional challenges goes to the breadth of the remedy employed by the Court, not necessarily the substance of the complaint itself.[54] The idea behind the distinction is that an as-applied challenge merely invalidates a particular application of a statute, rather than the entire statute.[55] Finding a statute unconstitutional "as-applied" is, simply put, an exercise in judicial restraint.
But in the context of rational-basis review, it is the opposite. As discussed above, when a legislative classification does not interfere with a fundamental right or target a suspect class, courts are required to defer to the lines drawn by the Legislature. In light of the standard set out in Dandridge , courts are not to set aside as unconstitutional a legislative classification if "any state of facts reasonably may be conceived to justify it."[56] By striking down a particular application of a rationally-drawn classification, courts necessarily engage in their own line-drawing by substituting their preferred classification for the one drawn by the Legislature.[57] That is *715 why determining whether a particular legislative classification significantly interferes with a fundamental right or targets a suspect class is the most important inquiry when addressing equal protection challenges.
II. Strict Scrutiny Does Not Apply
Ultimately, the resolution of this case turns upon the level of scrutiny we must apply in our evaluation of the statute at issue. Does strict scrutiny apply because the distinction between married and unmarried offenders significantly interferes with the fundamental right to marry? Rather than remand the case to the court of appeals to decide the issue, I would address the issue head-on. The answer is no.
A. Discretionary Review is Appropriate
According to the court of appeals, it did not resolve the argument of whether strict scrutiny applied to Appellant's claim because it resolved the claim under a rational-basis analysis.[58] But it is inaccurate to say that this means a strict-scrutiny analysis is not part of the lower court's decision. By invalidating the statute under the more deferential, rational-basis review, the court of appeals has issued a decision that necessarily includes a holding that the legislative classification at issue in this case cannot survive a less-deferential, strict-scrutiny analysis. Had the opinion been left to stand, it would have effectively decided the issue of whether strict-scrutiny review is appropriate. This is not a situation in which we would be addressing the merits of a claim that the court of appeals hasn't already touched on.
Further, we have granted discretionary review in other contexts to evaluate whether the court of appeals has simply applied the wrong standard of review.[59] In particular, we have done so to determine the appropriate level of deference a court of appeals owes to trial court decisions.[60] Here, we granted review to determine the appropriate level of deference owed to legislative enactments. And, as discussed above, the court of appeals analysis essentially combined strict-scrutiny review with rational-basis review by focusing upon whether the treatment of Appellant was rationally related to a legitimate governmental interest. Analyzing whether the court of appeals applied the correct standard of review is appropriate for discretionary review, and it is appropriate in this case.
*716 Finally, addressing the correct standard of review is warranted in the name of judicial economy.[61] Appellant has argued that strict scrutiny applies to his claim in the trial court and the court of appeals. The court of appeals has necessarily held that the legislative classification at issue fails under strict-scrutiny review because it fails under rational-basis review. We granted discretionary review and requested briefing on the appropriate standard of review. The question of what is the appropriate standard of review is properly before us.
B. Section 22.011(f) Does Not Significantly Interfere With The Right to Marry
Appellant argues that the appropriate standard of review for his claim is strict scrutiny because the legislative classification impinges upon his fundamental right to marry. The State maintains that rational-basis review was the proper standard because Appellant did not fall within a suspect class (marital status is not a suspect classification) and the statute does not significantly interfere with a fundamental right. The State is correct.
It is beyond question that the right to marry is fundamental, but that right has always been limited to marriage between two people. As the United States Supreme Court has observed, "polygamy has always been odious among the northern and western nations of Europe," and from the earliest history of England, polygamy has been treated as an offense against society.[62] In the United States, there has never been a time in any State of the Union when polygamy has not been an offence against society.[63] All fifty states have some form of prohibition against marriage between more than two people, each with punishments of varying severity.[64] Several states have the prohibitions woven into their state constitutions.[65] To the extent that Appellant's argument carries with it the implication that prohibitions against bigamy or polygamy themselves violate a fundamental *717 right to marry, that argument fails.
Further, for a statutory classification to implicate the fundamental right to marriage, it must act to prevent or significantly interfere with the exercise of that right. For example, in Zablocki v. Redhail , the Supreme Court struck down a statute that placed a restriction on obtaining a marriage license if the person seeking the license owed child support for a child that was not in his or her custody.[66] According to the Supreme Court, this statute interfered with the right to marry directly and substantially.[67] The Court was careful, however, to draw the distinction between the statute at issue and other regulations that merely related to marriage.
By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may be legitimately imposed. The statutory classification at issue here, however, clearly does interfere directly and substantially with the right to marry.[68]
On the one hand, the Supreme Court has applied rational-basis review to distinctions between married and unmarried individuals that effect eligibility for Social Security benefits.[69] But more recently, the Court has stricken down direct statutory limitations upon entering into a marriage.[70]
The ability to commit sexual assault or bigamy is not a "benefit" of marriage. The idea that someone might refrain from getting married just to avoid being punished more severely for a future sexual assault is, to put it politely, simply unrealistic. Any interference with the right to marry due to a statutory distinction between married and unmarried offenders is, at most, incidental, if not purely hypothetical.[71] As such, the statutory classification does not "significantly interfere" with the fundamental right to marry, and the distinction between married and unmarried offenders may be upheld if it is rationally related to a legitimate state interest.[72] Because the Court would rather remand the case than address this issue, I dissent to the Court's *718 dismissal of Appellant's petition for review as improvidently granted.
III. Conclusion
In reviewing a statute for an equal protection violation, we must first determine the level of scrutiny required.[73] I dissent from the Court's refusal to answer that question. I also disagree with the Court's resolution of Appellant's challenge to statutory classification at issue through resort to rational speculation rather than first considering the text and history of the statute itself. However, I agree with the Court that the punishment enhancement for sexual assault in Section 22.011(f) serves a legitimate purpose because it allows the State to punish more harshly sexual assault committed through a bigamous or polygamous relationship. Absent a showing that the statute significantly interferes with the fundamental right to marry, the statute does not have to be narrowly tailored to its intended goal. If the statute sweeps too broadly, it is up to our Legislature to pick a different broom.

See Tex. Penal Code § 22.011(f).

See State v. Rosseau , 396 S.W.3d 550, 558 (Tex. Crim. App. 2013).

See Estes v. State , 487 S.W.3d 737, 743-46 (Tex. App.-Fort Worth 2016, pet. granted).

Id. at 744.

Id.

1 CR at 7 ("Indictment No. 1388628").

Tex. Penal Code § 22.011(f).

See id. § 21.11.

1 CR at 78 ("Motion to Quash Counts 1-5 of the Indictment").

Id.

Id. at 243 ("Special Issue No. 1").

Appellant's Brief in the Second Court of Appeals at 30.

Id.

State's Brief in the Second Court of Appeals at 19-20.

Id. at 18-19 (citing Obergefell v. Hodges , --- U.S. ----, 135 S.Ct. 2584, 2599-601, 192 L.Ed.2d 609 (2015) ).

Estes , 487 S.W.3d at 749.

Id.

See id. ("Through its briefing and its oral argument, the State proposes that under section 22.011(f), a sexual assault becomes a first-degree felony when the defendant is married but the victim is not, when the victim is married but the defendant is not, when the defendant and victim are both married but not to each other, or when the victim is too young to be married.... [W]e cannot conclude that the legislature intended for the increased penalty under section 22.011(f) to apply in such an expansive fashion.").

Id. at 750.

Id. (citing Thornton v. State , 425 S.W.3d 289, 298 (Tex. Crim. App. 2014) ).

See State's Petition for Discretionary Review at 3.

Appellant's Petition for Discretionary Review at 1.

Estes , 487 S.W.3d at 747 n.8 (citations omitted) ("Appellant argues that we should apply a higher review of strict scrutiny with respect to his equal protection claim because section 22.011(f) 'impinges on his fundamental right to marry.' We need not resolve that argument because we conclude ... that as applied to appellant, section 22.011(f) does not have a rational governmental basis.").

See F.C.C. v. Beach Communications, Inc. , 508 U.S. 307, 314 n.6, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (quotation marks and citations omitted).

Brockett v. Spokane Arcades, Inc. , 472 U.S. 491, 501, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) (citations omitted).

Contra Concurring and Dissenting Opinion at 715 (arguing that the court of appeals "effectively decided the issue of whether strict-scrutiny review is appropriate").

Smith v. State , 463 S.W.3d 890, 900 (Tex. Crim. App. 2015) (Yeary, J., concurring and dissenting) ("When a court of appeals has failed to address an issue that was squarely presented to it, rather than reach that issue for the first time in discretionary review, we have typically remanded the cause for the court of appeals to address in the first instance.").

Appellant's Petition for Discretionary Review at 1.

U.S. Const. amend. XIV, § 1.

City of Cleburne v. Cleburne Living Center , 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citations omitted).

Id. at 439-40.

Id.case-ids="6200639" index="31" url="https://cite.case.law/us/473/432/#p439"> at 440 (citations omitted).

Id. (citing, inter alia , McLaughlin v. Florida , 379 U.S. 184, 192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (invalidating under strict scrutiny an anti-fornication law that by its terms applied only to interracial couples) ).

Id. (citing, inter alia , Skinner v. Oklahoma ex rel. Williamson , 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (invalidating under strict scrutiny a law permitting the sterilization of habitual criminals) ).

Id. (citations omitted).

Cleburne , 473 U.S. at 442, 105 S.Ct. 3249.

State ex rel. Lykos v. Fine , 330 S.W.3d 904, 908-09 (Tex. Crim. App. 2011).

Id. at 910.

Faust v. State , 491 S.W.3d 733, 743-44 (Tex. Crim. App. 2015) ("When reviewing the constitutionality of a statute, we presume that the statute is valid and that the Legislature acted reasonably in enacting it.").

Fine , 330 S.W.3d at 910.

Rosseau , 396 S.W.3d at 557 ("Appellee, as the individual challenging the statute, has the burden to establish its unconstitutionality.").

Fine , 330 S.W.3d at 910.

Beach Commc'ns, Inc. , 508 U.S. at 315, 113 S.Ct. 2096.

Id.

Id.

Vance v. Bradley , 440 U.S. 93, 111, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

Id. at 96-97 (in cases where neither a suspect classification nor a fundamental liberty interest is at issue, "courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws").

See, e.g. , Nordlinger v. Hahn , 505 U.S. 1, 17-18, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (internal quotation marks and citations omitted) ("[T]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely [a reviewing court] may think a political branch has acted.").

Beach Commc'ns, Inc. , 508 U.S. at 314, 113 S.Ct. 2096 (citations omitted).

Arteaga v. State , 521 S.W.3d 329, 335 n.9 (Tex. Crim. App. 2017) (emphasis omitted).

396 S.W.3d at 558.

Appellant's Brief in the Second Court of Appeals at 24.

State's Brief on the Merits of State's Petition for Discretionary Review at 16.

Id. at 17.

New York v. Ferber , 458 U.S. 747, 756-57, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (internal quotation marks and citations omitted).

Arteaga , 521 S.W.3d at 337.

See Tex. Penal Code § 22.011(f).

Arteaga , 521 S.W.3d at 335 & n.9 ("When we discuss 'facts that would constitute bigamy,' we do not mean that the State has to prove that the defendant [actually] committed ... bigamy.") (emphasis in original).

Id. at 337.

Id.

See ids="9152899" index="71" url="https://cite.case.law/p3d/99/820/#p830">id. at 335 n.9 ("[T]o elevate second-degree felony sexual assault to first-degree felony sexual assault under Section 22.011(f), the State must prove that the defendant committed sexual assault and that, if he were to marry or claim to marry his victim, or to live with the victim under the appearance of being married, then he would be guilty of bigamy.") (emphasis in original).

See Boykin , 818 S.W.2d at 785 (emphasis in original).

Contra Estes , 487 S.W.3d at 749 ("Again, we cannot conclude that the legislature intended for the increased penalty under section 22.011(f) to apply in such an expansive fashion.").

Beach Commc'ns, Inc. , 508 U.S. at 315, 113 S.Ct. 2096.

Estes , 487 S.W.3d at 748.

Id. at 749.

Id. at 748-49.

Heller v. Doe , 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

Bradley , 440 U.S. at 111, 99 S.Ct. 939.

Beach Commc'ns, Inc. , 508 U.S. at 315, 113 S.Ct. 2096.

Obergefell v. Hodges , --- U.S. ----, 135 S.Ct. 2584, 2599, 192 L.Ed.2d 609 (2015) (quoting Zablocki v. Redhail , 434 U.S. 374, 386, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) ) (characterizing marriage as "the relationship that is the foundation of the family in our society").

Id. at 2600 (quoting Zablocki , 434 U.S. at 384, 98 S.Ct. 673 ) (discussing "[t]he right to 'marry, establish a home, and bring up children' ").

Id. ("Marriage also affords the permanency and stability important to children's best interests.").

Id. at 2599 (quoting Goodridge v. Dep't of Public Health , 440 Mass. 309, 798 N.E.2d 941, 955 (2003) ) ("[M]arriage ... 'fulfils yearnings for security, safe haven, and connection that express our common humanity[.]' ").

Id. at 2600 ("A third basis for protecting the right to marry is that it safeguards children[.]") (citations omitted).

Id. at 2601 ("[T]his Court's cases and the Nation's traditions make clear that marriage is a keystone of our social order.").

Id. at 2600 (acknowledging the "recognition, stability, and predictability [that] marriage offers," especially in the eyes of children).

Sapp v. Newsom , 27 Tex. 537, 538 (Tex. 1864).

See 4 RR at 119 (wherein K.A.'s mother testifies that she let her daughter spend nights at Estes's house because she "knew that [Estes's wife] would be present"); id. at 125 (wherein K.A's mother testifies to her "feeling that [Estes] had the same moral values and beliefs that [she] did"); id. at 147 (wherein K.A. testifies that she initially developed a bond of trust with Estes "because he had a family of his own").

See Cleburne , 473 U.S. at 439, 105 S.Ct. 3249 ("The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational.").

Concurring and Dissenting Opinion at 710.

Id. at 713.

Id. at 710.

Id.

See, e.g. , Obergefell , 135 S.Ct. at 2608 ("No union is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice, and family."); Ferber , 458 U.S. at 756, 102 S.Ct. 3348 ("A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens.").

See Concurring and Dissenting Opinion at 713 ("Here, we have some indication of the legislative intent behind the passage of this amendment, yet the Court nevertheless posits a different rationale for the statute.").

See supra Part III.A.

See Beach Commc'ns, Inc. , 508 U.S. at 318, 113 S.Ct. 2096 (quoting United States Railroad Retirement Board v. Fritz , 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) ) ("Whether the posited reason for the challenged distinction actually motivated Congress is 'constitutionally irrelevant[.]' ").

Concurring and Dissenting Opinion at 713-14.

See Beach Communications, Inc. v. F.C.C. , 959 F.2d 975, 982 (D.C. Cir. 1992) ("First, there is legislative history that supports the FCC.... Petitioners adduce other excerpts from the legislative history; however, these excerpts are at best ambiguous."); see also id. (referring to "[g]eneral descriptions of Congress' purpose" in distinguishing between "cable" and "SMATV").

Concurring and Dissenting Opinion at 713.

See also Fritz , 449 U.S. at 179, 101 S.Ct. 453 ("[W]e disagree with the District Court's conclusion that Congress was unaware of what it accomplished or that it was misled by the groups that appeared before it. If this test were applied literally to every member of any legislature that ever voted on a law, there would be very few laws which would survive it. The language of the statute is clear, and we have historically assumed that Congress intended what it enacted.").

Beach Comm'cns, Inc. , 508 U.S. at 317, 113 S.Ct. 2096 ("Applying these principles, we conclude that the common-ownership distinction is constitutional. There are at least two possible bases for the distinction; either one suffices.").

Concurring and Dissenting Opinion at 713; see also Arteaga v. State , 521 S.W.3d 329 (Tex. Crim. App. 2017).

Concurring and Dissenting Opinion at 713.

Arteaga , 521 S.W.3d at 337.

Concurring and Dissenting Opinion at 708 ("[A] proper application of the [rational-basis] standard ... focuses upon whether the Legislature had a rational basis for drawing a classification in the statute.").

Id. at 709 (identifying "prohibiting bigamous or polygamous relationships and sexual assault pursuant to such relationships" as the "legitimate state interest" furthered by Section 22.011(f) ); id. at 711-14 (arguing that, by sustaining Section 22.011(f) as a rational means of deterring child abuse, the Court "substitut[es] its own policy preferences for th[ose] of the Legislature").

E.g. , id. at 710 ("Though the statute is written more broadly than necessary to accomplish its intended goal, the distinction between married and unmarried offenders underlying Section 22.011(f) is at least rationally related to that goal.").

Id. at 709 (citing State v. Rosseau , 396 S.W.3d 550, 558 (Tex. Crim. App. 2013) ).

Id. at 709 (citing State v. Green , 99 P.3d 820, 830 (Utah 2004) ).

See ids="9152899" index="119" url="https://cite.case.law/p3d/99/820/#p830">id. at 708 n.16(faulting the court of appeals for "focus[ing] exclusively on the effect the statute has on Appellant").

Id. at 708 ("In this case, the problem with the court of appeals['] analysis lay in the focus upon whether there was a rational basis to elevate Appellant's punishment ... rather than upon whether there was a rational basis for the Legislature to draw a distinction between married and unmarried defendants in the statute.").

Karenev v. State , 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (Cochran, J., concurring).

Id. (citing 16 C.J.S. Constitutional Law § 113, at 149 (2005) ).

See Rosseau , 396 S.W.3d at 558 ("Therefore, the statute is not facially unconstitutional because it has at least one valid application: the punishment of bigamists who sexually assault their purported spouses.").

Id. at 558 n.9 ; see also ids="7093676" index="124" url="https://cite.case.law/sw3d/396/550/#p558">id. at 558 n.9 ("In a facial challenge to a statute's constitutionality, we examine the statute as it is written, rather than how it is applied in a particular case.").

Cf. Texas v. Johnson , 491 U.S. 397, 410, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) ("We thus conclude that the State's interest in maintaining order is not implicated on these facts.").

Fine , 330 S.W.3d at 910.

Contra Concurring and Dissenting Opinion at 707.

Appellant's Brief on the Merits of State's Petition for Discretionary Review at 16 ("Appellant does not contend that ... the State was required to prove Appellant committed an offense under Section 25.01 to prove he committed an offense of sexual assault bigamy as charged in this case.").

Id. at 710-11 ("[T]he application of Section 22.011(f) to Appellant in this case is not rationally related to the express governmental interest the legislation that amended Section 22.011(f) was enacted to promote.").

Fine , 330 S.W.3d at 910.

E.g. , Estes , 487 S.W.3d at 747 n.8 (citations omitted) ("Appellant argues that we should apply a higher review of strict scrutiny with respect to his equal protection claim because section 22.011(f) 'impinges on his fundamental right to marry.' We need not resolve that argument because we conclude ... that as applied to appellant, section 22.011(f) does not have a rational governmental basis."); id. at 750 (citations omitted) ("Having concluded that section 22.011(f) violates equal protection as applied in this case, we decline to address appellant's argument that the application of the section in these circumstances also violates his due process rights.").

Tex. Pen. Code § 22.011(f).

Schlittler v. State , 488 S.W.3d 306, 316 (Tex. Crim. App. 2016) (citing U.S. Const . amend XIV ; City of Cleburne v. Cleburne Living Center , 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ).

Smith v. State , 898 S.W.2d 838, 847 (Tex. Crim. App. 1995).

Id. ; see also Personnel Adm'r of Massachusetts v. Feeney , 442 U.S. 256, 272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (noting that the focus of an equal protection challenge is the validity of the legislative classification). The Court does not address the court of appeals determination that Appellant established that he is "similarly situated" to unmarried offenders who are receiving less punishment. See Estes v. State , 487 S.W.3d 737, 748 (Tex. App.-Fort Worth 2016). However, the State does not contest this aspect of the court of appeals holding, and the Court appears to proceed on the assumption that Appellant has satisfied this criteria of his equal protection challenge.

Smith , 898 S.W.2d at 847

City of Cleburne , 473 U.S. at 446, 105 S.Ct. 3249.

Id.case-ids="6200639" index="145" url="https://cite.case.law/us/473/432/#p439"> at 440, 105 S.Ct. 3249. See Washington v. Glucksberg , 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (due process clause protects the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion).

San Antonio Indep. Sch. Dist. v. Rodriguez , 411 U.S, 1, 33-34, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (explaining that the key to discovering whether a particular right-in that case education-is "fundamental" is not to be found in comparisons of the relative societal significance of the right or weighing whether the right is as important as another right; the answer lies in assessing whether the right is explicitly or implicitly guaranteed by the Constitution).

Frontiero v. Richardson , 411 U.S. 677, 686, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

Massachusetts Bd. of Retirement v. Murgia , 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (quoting San Antonio Independent School Dist. v. Rodriguez , 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) ). Appellant does not appear to argue that marital status constitutes a suspect or quasi-suspect class.

City of Cleburne , 473 U.S. at 440, 105 S.Ct. 3249.

Feeney , 442 U.S. at 272, 99 S.Ct. 2282.

Id.

397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (citations and internal quotation marks omitted).

Id.

The court of appeals seems to focus exclusively on the effect the statute has on Appellant without identifying a particular legislative classification. Estes , 487 S.W.3d at 748. The court of appeals seems to proceed upon the assumption that Section 22.011(f) draws a legislative distinction between married and unmarried offenders. As no one challenges this assumption, neither do I.

Estes , 487 S.W.3d at 747.

Id. at 748.

New York City Transit Authority v. Beazer , 440 U.S. 568, 593, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

Id.

Dandridge , 397 U.S. at 484, 90 S.Ct. 1153.

Estes , 487 S.W.3d at 748.

Id.

Id. ("Although not determinative of the constitutional issue before us, nothing in the record shows that the increased penalty based only on appellant's status of being married serves that rational purpose of the statute; the evidence does not show that appellant sexually assaulted Katie as part of an allegedly bigamous or polygamous relationship or under any ostensibly religious justification.").

State v. Rosseau , 396 S.W.3d 550, 558 (Tex. Crim. App. 2013).

Id.

See State v. Green , 99 P.3d 820, 830 (Utah 2004) (upholding Utah's bigamy statute against constitutional challenge).

Id. (footnote omitted).

In order to prosecute someone for the offense of bigamy, the State must first prove either that the defendant is legally married or that the person he or she purports to marry is already legally married. Tex. Pen. Code § 25.01 (a)(1).

Judge Keasler argues that I mischaracterize the Court's holding. To paraphrase Shakespeare, "Methinks he doth protest too much." William Shakespeare, Hamlet act 3, sc. 2 ("The lady doth protest too much, methinks.").

See Skinner v. Oklahoma , 316 U.S. 535, 540, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (noting that the equal protection clause does not prevent the legislature from recognizing degrees of evil).

Meyer v. Nebraska , 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

For example, in Zablocki v. Redhail , the State of Wisconsin sought to justify a statute that prohibited someone from getting a marriage license if he or she had failed to pay child support for an out-of-custody child on the basis of protecting the welfare of out-of-custody children. 434 U.S. 374, 388-89, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). The United States Supreme Court found this justification unpersuasive because it lacked a clear connection between the State's interest and the statute's requirement. Id. This lack of a connection led the parties to narrow the rationale oral argument to suggest that it would provide an incentive to make support payments. Id.

FCC v. Beach Communications, Inc. , 508 U.S. 307, 309-11, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

Id. at 311, 113 S.Ct. 2096.

Id. at 320, 113 S.Ct. 2096.

Id. at 312, 113 S.Ct. 2096.

Id.

Id.

Id. at 315, 113 S.Ct. 2096.

Id. at 315, 113 S.Ct. 2096.

Id.

Id. ("These restraints on judicial review have added force 'where the legislature must necessarily engage in a process of line-drawing.' ")(quoting United States Railroad Retirement Bd. v. Fritz , 449 US. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) ).

Id. at 315-16, 113 S.Ct. 2096 (quoting Fritz , 449 U.S. at 179, 101 S.Ct. 453 ).

Boykin v. State , 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

Tex. Penal Code § 22.011(f).

Tex. Penal Code § 25.01.

Arteaga v. State , 521 S.W.3d 329, 336-37 (Tex. Crim. App. 2017).

Id.

Id. at 337. Nowhere in our examination of the legislative history behind the passage of Section 22.011(f) did we find an expressed concern regarding sexual assault committed under the "cloak of marriage."

Obergefell v. Hodges , --- U.S. ----, 135 S.Ct. 2584, 2601, 192 L.Ed.2d 609 (2015) (citations omitted).

See Pavan v. Smith , --- U.S. ----, 137 S.Ct. 2075, 2078-79, 198 L.Ed.2d 636 (2017) (holding that deprivation of one out of a "constellation of benefits" associated with marriage to same-sex couples violated equal protection).

See City of Cleburne , 473 U.S. at 476, 105 S.Ct. 3249 (Marshall, J., concurring in the judgment in part and dissenting in part) ("To my knowledge, the Court has never before treated an equal protection challenge to a statute on an as-applied basis.").

Citizens United v. Federal Election Com'n , 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).

United States v. National Treasury Employees Union , 513 U.S. 454, 477-78, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (noting that crafting a narrow remedy in a challenge to a statute based upon the First Amendment based upon its unconstitutional application furthers a policy of avoiding unnecessary adjudication of constitutional issues); see also Ayotte v. Planned Parenthood of Northern New England , 546 U.S. 320, 328-29, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force").

397 U.S. at 485, 90 S.Ct. 1153. This is the same standard utilized by the Supreme Court in Beach . 508 U.S. at 313, 113 S.Ct. 2096 ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."). If this undermines the distinction between as-applied and facial constitutional challenges in the context of equal protection, then the distinction is incompatible with the standard for rational basis review set out by the United States Supreme Court.

We have, in two previous cases, noted the distinction between as-applied and facial constitutional challenges in the context of equal protection, but that distinction was not outcome determinative in either case. In State v. Rosseau , we treated the defendant's challenge to the bigamy enhancement provision as a facial challenge to the statute. 396 S.W.3d at 556-57. By holding that the statute was facially constitutional, we necessarily conducted a proper rational-basis review by determining that there was a conceivable set of facts that provided a rational basis for the legislative classification at issue. Id. at 558. And while we held that a legislative classification was constitutional "as applied" in Schlittler v. State , this was also a proper rational-basis review because we determined that the set of facts presented in that case provided a rational basis for the legislative classification. 488 S.W.3d at 317. Neither case provides support for maintaining a distinction between as-applied and facial equal protection challenges in opposition to the standard for rational-basis review.

Estes , 487 S.W.3d at 747 n. 8.

See, e.g., Lancon v. State , 253 S.W.3d 699, 704 (Tex. Crim. App. 2008) (noting that question of whether the court of appeals applied the correct standard of review when addressing the sufficiency of the evidence is a legal question reviewable by the Court of Criminal Appeals).

See, e.g., Montanez v. State , 195 S.W.3d 101, 108 (Tex. Crim. App. 2006) (holding that court of appeals applied the wrong standard of review in the context of a review of a motion to suppress).

State v. Cortez , 543 S.W.3d 198, 200-01, 2018 WL 525696 at *1 (Tex. Crim. App. 2018).

Reynolds v. United States , 98 U.S. 145, 164, 25 L.Ed. 244 (1878).

Id. at 165.

Cal. Penal Code § 281 (2017) ; Fla. Stat. § 826.01 (2017) ; Mo. Rev. Stat § 568.010 (2017) ; Utah Code Ann. § 76-7-101 (2017) ; Colo. Rev. Stat. § 18-6-201 (2016) ; D.C. Code § 22-501 (2016) ; Ind. Code § 35-46-1-2 (2014) ; La. Stat. Ann. § 14:76 (2014); Iowa Code § 726.1 (2013); Tenn. Code Ann. § 39-15-301 (2013); 720 Ill. Comp. Stat. 5/11-45 (2011) ; Kan. Stat. Ann. § 21-5609 (2011); Tex. Penal Code § 25.01 (2011); Wash. Rev. Code § 9A.64.010 (2011); Mont. Code Ann. § 45-5-611 (2009); Vt. Stat. Ann. tit. 13, § 206 (2009); S.D. Codified Laws § 22-22A-1 (2005) ; Va. Code. Ann. § 18.2-362 (2003) ; Md. Code Ann., Crim. Law § 10-502 (2002); Wis. Stat. § 944.05 (2001); Okla. Stat. tit. 21, § 883 (1999); Del. Code Ann. tit. 11, § 1001 (1995); N.C. Gen. Stat. § 14-183 (1994) ; Haw. Rev. Stat. § 709-900 (1993); Conn. Gen. Stat. § 53A-190 (1992); 11 R.I. Gen. Laws § 11-6-1 (1989) ; Minn. Stat. § 609.355 (1986) ; Wyo. Stat. Ann. § 6-4-401 (1982) ; Alaska Stat. § 11.51.140 (1978) ; Ariz. Rev. Stat. Ann. § 13-3606 (1978); N.J. Stat. Ann. § 2C:24-1 (1978) ; Ala. Code § 13A-13-1 (1977) ; Neb. Rev. Stat. § 28-701 (1977) ; Ark. Code Ann. § 5-26-201 (1975); Ky. Rev. Stat. Ann. § 530.010 (1975); Me. Stat. tit. 17-A, § 551 (1975); Ohio Rev. Code Ann. § 2919.01 (1974); N.H. Rev. Stat. Ann. § 639:1 (1973) ; N.D. Cent. Code § 12.1-20-13 (1973); Idaho Code § 18-1103 (1972) ; 18 PA. Cons. Stat. § 4301 (1972); Or. Rev. Stat. § 163.515 (1971); Mass. Gen. Laws ch. 272, § 15 (1969); Ga. Code Ann. § 16-6-20 (1968); N.Y. Penal Law § 255.15 (Consol. 1967); Nev. Rev. Stat. § 171.055 (1963); N.M. Stat. Ann. § 30-10-1 (1963) ; S.C. Code Ann. § 16-15-10 (1962) ; Miss. Code Ann. § 97-29-13 (1942) ; Mich. Comp. Laws § 750.440 (1931) ; W. Va. Code § 61-8-1 (1923).

Ariz. Const. art. 20, para. 2; Idaho Const. art. I, § 4 ; Okla. Const. art. III, § 1 ; Utah Const. art. III, § 1.

434 U.S. 374, 390-91, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

Id. at 387, 98 S.Ct. 673.

Id. at 386-87, 98 S.Ct. 673 (citations omitted).

See, e.g., Califano v. Jobst , 434 U.S. 47, 58, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977) ; Mathews v. De Castro , 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).

See, e.g., Obergefell , 135 S.Ct. at 2601 ; United States v. Windsor , 570 U.S. 744, 755, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013). Most recently, the United States Supreme Court invalidated a statute that authorized the omission of a birth mother's female spouse from her child's birth certificate. Pavan v. Smith , --- U.S. ----, 137 S.Ct. 2075, 2078, 198 L.Ed.2d 636 (2017). The Court's summary reversal and remand in the case makes it unclear as to why the statute violated the Equal Protection Clause other than that it was, according to the Court, proscribed by the Court's decision in Obergefell . Id.

See Schlittler v. State , 488 S.W.3d 306, 317 (Tex. Crim. App. 2016) (any infringement upon father's fundamental liberty interest in the care, custody, and management of his son is triggered only incidentally by his conduct in sexually assaulting a member of his own family); see also Johnson v. Rodriguez , 110 F.3d 299, 316 (5th Cir. 1997) (noting that a burden on a fundamental right does not warrant strict-scrutiny review if the burden is merely "incidental").

C.f. Zablocki , 434 U.S. at 388, 98 S.Ct. 673.

Cannady v. State , 11 S.W.3d 205, 215 (Tex. Crim. App. 2000).