

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1382-18

**RITO GREGORY LOPEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SEVENTH COURT OF APPEALS
MOORE COUNTY**

---

## NO. PD-1265-18

**MICHAEL RAY SENN, Appellant**

**v.**

**THE STATE OF TEXAS**

---

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SECOND COURT OF APPEALS
TARRANT COUNTY**

**ABEL DIAZ RODRIGUEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIRST COURT OF APPEALS
GALVESTON COUNTY**

**KEASLER, J., filed a concurring opinion, in which HERVEY, J., joined.**

**CONCURRING OPINION**

I would join the Court's opinion, but there is one issue that I think the Court, striving for concision, oversimplifies. In determining whether the plain meaning of Texas Penal Code Section 22.011(f) would lead to absurd results the Legislature could not possibly have intended, the Court notes our 2018 opinion in *Estes v. State*.[1] In so doing, however, the Court miscasts *Estes*'s reasoning. I write separately to set the record straight.

*Estes* involved an as-applied challenge to the constitutionality of Texas Penal Code Section 22.011(f). Estes, a married man, sexually assaulted a fourteen-year-old girl. He was convicted of sexual assault of a child, and, despite the fact that he did not marry his victim, claim to marry his victim, or live with his victim under the appearance of being

---

[1] *See* Majority Opinion at 8 (discussing *Estes v. State*, 546 S.W.3d 691, 701 (Tex. Crim. App. 2018)).

married, his sentence was enhanced pursuant to Section 22.011(f). Challenging the enhancement, Estes argued that Section 22.011(f) existed solely to combat "the blight of bigamy and polygamy."[2] There was no other justification for it. And because he was not actually engaging in bigamy or polygamy, applying the enhancement to his conduct arbitrarily discriminated against him for being married.

Because *Estes* came to us as an as-applied constitutional challenge, we took into account the crucial, case-bound fact that Estes's victim was a child. It was in the unique context of child victims that we discussed the marital perception of trustworthiness.

> There is an indelible connection in our society between the union of marriage and the ideas of "family," "home," "stability," "security, safe haven"—and, indeed, "children." These connections were not conjured from thin air; they are deeply embedded in the public's time-honored understanding of what marriage entails. Just as the Supreme Court did, the Legislature could rationally conclude that to be a married man or woman is to project the kind of "stability" and "safe haven" that many children find comfort in. It could rationally conclude that one who has solemnly sworn to forsake all others might be perceived, at least by some parents, as being less likely to make sexual advances upon their children. And it could rationally see fit to declare that one who would enjoy this marital perception of trustworthiness will be punished all the more severely if he uses it to groom, and then sexually abuse, a child. [3]

We therefore concluded that in cases where a married person sexually assaults a child, there is a rational basis for applying the Section 22.011(f) enhancement even if the offender was not actually practicing bigamy or polygamy.

---

[2] *See Estes*, 546 S.W.3d at 699 (quoting *Arteaga v. State*, 521 S.W.3d 329, 337 (Tex. Crim. App. 2017)).

[3] *Id.* at 701 (cleaned up) (quoting *Obergefell v. Hodges*, 135 S. Ct. 2584, 2599 (2015)).

The Court argues that "much of [*Estes*'s] reasoning would apply equally" to cases in which a married offender sexually assaults an adult.[4]  That's because, according to the Court, a married defendant who sexually assaults an adult "abuse[s]" the deeply rooted ideas of "family, home, safety, stability, and security" just as much as one who sexually assaults a child.[5]  But the point of *Estes* wasn't that it's rational to harshly punish a married child rapist because he abuses the ideas of family, home, and safety *per se*.  The point was that, given the connection between marriage and family, home, safety, *et cetera*, the Legislature could rationally assume "that married people have an easier time gaining the trust of children and parents than unmarried persons."[6]  It could rationally deduce that "those who are inclined to make sexual advances upon children, and whose marital status would make the commission of a crime in satisfaction of those urges incrementally easier to consummate, may need an additional deterrent to further dissuade them from" doing so.[7]  And "it could reasonably conclude that increasing the range of punishment in these circumstances is appropriately suited to that task."[8]

This reasoning loses much of its persuasiveness in adult-victim cases.  Grown-ups understand, to a degree that children do not, that a person's being married does not

---

[4]  Majority Opinion at 8.

[5]  *Id.*

[6]  *See Estes*, 546 S.W.3d at 702 (plurality portion).

[7]  *Id.*

[8]  *Id.* at 703.

necessarily make him or her worthier of trust. Adults are no likelier to put themselves in risky situations merely because their would-be attackers assure them that, because they are married, they can be trusted. As a result, the "additional deterrent" rationale that we employed in *Estes* does not suffice to show that Section 22.011(f)'s plain meaning is non-absurd in adult-victim cases.

Neither does it suffice to quote *Estes*'s observation that, under the literal text of Section 22.011(f), "anyone who engages in sexually assaultive, would-be-bigamous conduct may trigger the enhancement, whether his acts are inflicted upon a child or not."[9] The point in controversy here is not whether the literal text of Section 22.011(f) is broad enough to encompass adult-victim sexual assaults. It plainly is. At issue is whether applying Section 22.011(f)'s plain meaning in cases where a monogamously married person sexually assaults an adult is an absurd result "the Legislature could not possibly have intended."[10] *Estes* doesn't speak to that issue, in that passage or any other.[11] Ultimately, more must be said about why the plain meaning of Section 22.011(f) is non-

---

[9] *See* Majority Opinion at 8 (quoting *Estes*, 546 S.W.3d at 699).

[10] *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (emphasis omitted).

[11] *See Estes*, 546 S.W.3d at 706 ("The particular facts and circumstances that inform—and limit—our ruling today are that Estes is a married man convicted of sexually assaulting a child.") (plurality portion).

absurd in adult-victim cases. As relevant here, *Senn* is one such case.[12] Senn, a married man, sexually assaulted his adult biological daughter.

Here is how I would go about showing that Section 22.011(f) does not lead to absurd results in cases in which a married person sexually assaults a non-spousal adult. The way I see it, the Legislature could rationally conclude that, in such cases, the offender has actually victimized two people: (1) the person whom he sexually assaulted, and (2) his spouse, upon whom he has inflicted a wound that is psychological rather than physical. The Legislature might "possibly" have intended to mete out a harsher sentence for one whose conduct hurts multiple people, and that is enough to save Section 22.011(f)'s plain meaning in adult-victim cases.[13] A similar rationale may justify applying Section 22.011(f)'s plain language in cases in which an unmarried person sexually assaults a married person, but that issue is not yet before the Court.

I respectfully concur in the result.

Filed: April 29, 2020

Publish

---

[12] *See Senn v. State*, No. 02-15-00201-CR, 2018 WL 5291889 (Tex. App.—Fort Worth 2018).

[13] *See Boykin*, 818 S.W.2d at 785 (emphasis omitted).