Opinion issued July 17, 2025



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00593-CR

_____

**ALVARO JERONIMO JUAREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1674456**

---

## MEMORANDUM OPINION

In prosecuting Alvaro Jeronimo Juarez for the continuous sexual abuse of

L.C., a girl less than fourteen years of age at the time of the offense, the trial court

admitted evidence that Juarez sexually abused three other children in L.C.'s family.

Juarez appeals, contending the evidence of the extraneous offenses deprived him of

due process and should have been excluded under Texas Rule of Evidence 403. Because we conclude there was no due-process violation and the prejudicial effect of the extraneous-offense evidence did not substantially outweigh its probative value, we affirm the judgment of conviction.

## Background

A grand jury indicted Juarez for continuous sexual abuse of L.C. for acts occurring between February 2009 and February 2014, when L.C. was between the ages of six and ten. During this time, L.C. stayed in two different homes with her immediate and extended family—a red-brick duplex and a trailer. When she was six or seven years old, L.C. stayed in the red-brick duplex with her grandparents, her mother, her younger sisters L.Z. and A.Z., two uncles, and her niece M.G. (who was close in age with L.C. and her sisters). Juarez, a family friend, stayed there too.

Juarez shared a bedroom with L.C.'s uncles and kept snacks L.C. and the other children enjoyed in a closet. L.C. claimed that Juarez used the snacks to entice her and the other children into his bedroom, which had a bunk bed. She recalled one time when she and L.Z. entered the bedroom together, Juarez put L.Z. on the top bunk and used a computer to distract her while, on the lower bunk, he pulled L.C.'s pants down, kissed her, rubbed her vagina with his fingers, and then put his penis "on top of [her] vagina" and rubbed it. After he stopped, Juarez grabbed a shirt from

2

his closet and used it to clean L.C. and himself. He then told L.C. to play on the computer while he did something to L.Z., which L.C. did not see.

L.C. estimated that Juarez touched her inappropriately by rubbing her vagina with his fingers more than fifteen times in the red-brick duplex. And the abuse continued when Juarez moved with L.C. and her family into the trailer. She recalled one occasion in the trailer, when she was about nine years old, Juarez entered the room where she and L.Z. slept, pulled her pants down, sat her on top of his penis, and rubbed her "front and back." The abuse stopped when she got her period around the age of ten.

L.C. did not tell anyone about the abuse because she feared getting in trouble. But the abuse came to light several years later, in 2018, when L.C.'s younger sister A.Z. revealed to their mother that she had been abused. Their mother called the police to report a sexual assault, and the police investigated Juarez's contact not just as to A.Z. but also as to L.C., L.Z., and M.G. All four children went for sexual-assault examinations and forensic interviews.

Before trial, the State notified Juarez of its intention to use evidence that he had sexually abused L.Z., A.Z., and M.G.

Typically, the State cannot present evidence of extraneous offenses—prior "crime[s], wrong[s], or other act[s]"—to show the defendant "acted in accordance with [bad] character" or had a propensity to commit the crime. *See* TEX. R. EVID.

3

404(b). But when a defendant is on trial for certain sexual offenses, like continuous sexual abuse of L.C. here, the law is different. Under Article 38.37, Section 2(b) of the Code of Criminal Procedure, evidence that the defendant committed a separate sexual offense may be admitted "for any bearing [it] has on relevant matters," including the defendant's character and acts performed in conformity with the defendant's character. TEX. CODE CRIM. PROC. art. 38.37, § 2(b). Such evidence is permitted "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence," which govern character evidence, but the statute does not mention Rule 403. *Id.* Before the evidence may be introduced, the trial court must hold a hearing out of the jury's presence and determine whether the evidence likely to be admitted will support a jury finding "that the defendant committed the separate offense beyond a reasonable doubt." *Id.* § 2-a.

At the hearing on the extraneous offenses, L.Z., A.Z., and M.G. all testified that Juarez had inappropriately touched them. Though there were some differences in the events they described—for instance, the sexual abuse A.Z. alleged happened four or five years after the sexual abuse L.C. alleged—they all testified that Juarez abused them around the same age in either the red-brick duplex or the trailer, that he enticed them into his bedroom with snacks, that he used electronic devices as a distraction, that he removed their pants, and that he touched their genitals with his fingers or penis. Like L.C., L.Z. testified that Juarez used a shirt to wipe her after

he finished. Both she and M.G. testified that Juarez had also penetrated their vaginas with his penis.

Juarez objected at the hearing that L.Z., A.Z., and M.G. should not be allowed to testify about the extraneous offenses because applying Article 38.37 would be unconstitutional and deprive him of a fair trial. He also objected under Rule 403 that extraneous-offense evidence was unfairly prejudicial and risked confusing the issues. The trial court excluded some of the evidence the State sought to introduce— namely, testimony from L.Z. that Juarez had also abused her outside of the home, in his truck. But the trial court otherwise overruled appellant's constitutional and Rule 403 objections, allowing L.Z., A.Z., and M.G. to testify at trial.

The State's other witnesses included L.C., her mother, the police officers who responded to her mother's 911 call and investigated the allegations against Juarez, a forensic-interview expert who reviewed the children's videotaped statements, a clinical psychologist who testified about the effects of childhood sexual trauma, and a Sexual Assault Nurse Examiner (SANE) who examined L.C., did not find anything abnormal, and explained why DNA or other physical evidence is unlikely to be found in a medical examination conducted more than a few days after a sexual assault.[1] The State also provided testimony from one of L.C.'s uncles who shared a

---

[1]   L.Z.'s, A.Z.'s, and M.G.'s sexual-assault examinations were more limited in scope and did not reveal any abnormalities.

bedroom with Juarez. He is older than L.C. but was still a child at the time. He testified that when he was twelve or thirteen years old, he came home when the door to the shared bedroom in the trailer was closed. He opened the door and saw Juarez on his knees, with the top half of his body on the lower bunk bed. L.C. was on the bed under Juarez. Juarez got up and told L.C. he did not want to play with her "like this." L.C.'s uncle explained that he was "confused" by what he saw, walked out of the room, and thought "what the heck is going on." He did not tell anybody what he saw but asked Juarez not to let the younger girls in the bedroom.

Juarez testified in his own defense. He denied offering snacks to the children, disrobing them, or touching any of them inappropriately at either the red-brick duplex or the trailer. And he testified that L.C.'s uncle had lied about seeing him on top of L.C.

After the close of evidence, the jury found Juarez guilty of continuous sexual abuse of L.C. The trial court assessed punishment at forty years' confinement.

## Article 38.37, Section 2(b)

In his first issue, Juarez argues Article 38.37, Section 2(b) is unconstitutional as applied to him because it deprived him of due process under the Fourteenth Amendment to the United States Constitution. The constitutionality of Article 38.37, Section 2(b), as applied, is a question of law that we review de novo. *Ex parte*

*Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Deggs v. State*, 646 S.W.3d 916, 922 (Tex. App.—Waco 2022, pet. ref'd).

The Due Process Clause protects the defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). The essential guarantee of due process is "that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures." *Long v. State*, 742 S.W.2d 302, 320 (Tex. Crim. App. 1987) (quotation omitted), *overruled on other grounds by Briggs v. State*, 789 S.W.2d 918 (Tex. Crim. App. 1990). A defendant asserting a due-process violation must show "the challenged statute or rule violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency.'" *Belcher v. State*, 474 S.W.3d 840, 844 (Tex. App.—Tyler 2015, no pet.) (quoting *Dowling v. United States*, 493 U.S. 342, 352–53 (1990)).

Generally, the defendant must be tried only for the charged offense and may not be tried for a collateral crime or being a criminal generally. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). As we have already noted, however, Article 38.37, Section 2(b) creates an exception to the general exclusion in criminal trials of character or propensity evidence by proof of extraneous offenses. *See* TEX.

CODE CRIM. PROC. art. 38.37, § 2(b). By enacting Article 38.37, Section 2(b), the Legislature made extraneous offenses admissible for any relevant purpose in a trial for certain sex offenses against a child, including as proof of the defendant's character and propensity to commit such offenses. *See id.*

A statute's constitutionality may be challenged in two ways: "on its face" or "as applied." *Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018). A defendant raising a "facial" challenge asserts the statute is unconstitutional "on its face," meaning it operates unconstitutionally in all potential applications. *Id.* A litigant making an "as-applied" challenge concedes the general constitutionality of the statute but asserts it is unconstitutional as applied to his particular facts and circumstances. *Id.* at 698.

Juarez complains that Article 38.37, Section 2(b) is unconstitutional as applied to him in this case because the protections provided by Rule 403, which have been used as a basis to find the statute facially constitutional, were illusory. *See, e.g.*, *Robisheaux v. State*, 483 S.W.3d 205, 210–12 (Tex. App.—Austin 2016, pet. ref'd). That is, Juarez asserts the statute's operation effectively prevented the trial court from meaningfully considering whether evidence he sexually assaulted L.Z., A.Z., and M.G. should have been excluded under Rule 403 and lessened the State's burden in proving the charged offense against L.C. According to Juarez, because the statute allows such evidence if it is "adequate" for a reasonable jury to find he

committed the extraneous offenses beyond a reasonable doubt, the trial court could not fulfill its gate-keeping function, making due process a mere "mirage."

Assuming without deciding that Juarez preserved his as-applied challenge for appellate review, we conclude the record does not support his complaint. After L.Z., A.Z., and M.G. testified at the pretrial hearing, Juarez objected that the evidence should be excluded not just on constitutional grounds but also under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* TEX. R. EVID. 403. The trial court allowed the State and Juarez to argue the evidence's utility and costs and then excluded some evidence (that Juarez had sexually assaulted L.Z. in his truck, which was a different location than the charged offense). The trial court otherwise overruled Juarez's objections and allowed the evidence. The trial court instructed the jury not to consider the extraneous offenses unless it believed beyond a reasonable doubt that Juarez committed them, and it instructed the jury on the State's burden to prove each element of the charged offense beyond a reasonable doubt.

The trial court thus followed the statute's requirements and, after hearing evidence and arguments, determined that the evidence was enough for a reasonable jury to find that Juarez committed the extraneous offenses beyond a reasonable doubt and that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice or confusion of the issues. Accordingly, the trial court

9

held an evidentiary gate-keeping hearing during which both sides actively participated; due process was not a "mirage" for Juarez. Although Juarez disagrees with the trial court's conclusions as we discuss more below, we cannot conclude that Article 38.37, Section 2(b) is unconstitutional as applied to him. *See, e.g.*, *Deggs*, 646 S.W.3d at 923–24 (rejecting similar complaint that Article 38.37, Section 2(b) was unconstitutionally applied because it rendered Rule 403 illusory).

We overrule Juarez's first issue.

### III. Rule 403

In his second issue, Juarez argues the trial court erred by overruling his objection to the evidence that he sexually assaulted L.Z., A.Z., and M.G. under Rule 403. We review the trial court's ruling for an abuse of discretion and will uphold it if it is within the zone of reasonable disagreement. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024).

Rule 403 gives the trial court discretion to exclude otherwise relevant evidence when the costs of admission outweigh its utility. In "he said, she said" sexual-assault cases like this one, where the credibility of both the complainant and the defendant is central, the rule should be used "very sparingly." *Johnson v. State*, 490 S.W.3d 895, 911 (Tex. Crim. App. 2016); *see also Robisheaux*, 483 S.W.3d at 218 (recognizing trial courts are given "especially high level of deference" for Rule 403 determinations). The test is whether the probative value of the relevant evidence

10

"is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403 (emphasis added). To determine whether the test is met, courts balance four non-exclusive factors: "(1) how probative the evidence is[;] (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019). Applying these factors, we conclude the trial court did not abuse its discretion by allowing the evidence of the extraneous offenses against L.Z., A.Z., and M.G.

Under the first factor, probative value "means more than simply relevance." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). It instead "refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.*

This Court and others have recognized evidence of separate sexual offenses against other children as probative of a defendant's character or propensity to commit the charged sexual offense against a child complainant. *See, e.g.*, *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet ref'd); *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.).

11

Considering Juarez denied touching L.C. and accused her of lying, the extraneous offenses were especially probative because of their similarity to the charged offense against L.C. The sexual abuse of L.Z. and M.G. happened in the same location and around the same time as the charged offense, against similarly situated and aged complainants, and involved many of the same details, such as Juarez using snacks to draw them into his bedroom, using electronic devices to distract them, and cleaning up with a shirt. At various times, L.C., L.Z., and M.G. were together in the room when the sexual abuse of one or the other of them took place. While the sexual abuse of A.Z. happened a few years later, the similarity of age, location, and method makes that offense highly probative, too. *See Bargas v. State*, 252 S.W.3d 876, 893 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (addressing similarity of extraneous offense in Rule 403 analysis). The first factor thus weighs in favor of admissibility.

The second factor considers the potential for the evidence to impress the jury in some irrational but nevertheless indelible way. *See Hart*, 688 S.W.3d at 894. It compels us to consider whether the evidence has a "tendency to suggest [a] decision on an improper basis," usually emotional in nature. *Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022).

Juarez contends "the acts recounted by L.Z., A.Z., and M.G. by their very nature 'tend to inflame.'" Undoubtedly that is true—perhaps even more so when, as

here, the jury hears from multiple other children. *See, e.g.*, *Martin v. State*, 176 S.W.3d 887, 897 (Tex. App.—Fort Worth 2005, no pet.) (evidence of sexual misconduct involving children is inherently inflammatory). But the testimony Juarez complains of is prejudicial for the very reason Article 38.37 allows its admission—it indicates a propensity to commit sexual assaults on children. Juarez has not identified any specific facts about the other sexual assaults that make them uniquely or unfairly prejudicial. Additionally, the trial court equipped the jury with an instruction to consider the other sexual assaults only if the jury believed beyond a reasonable doubt that Juarez committed them. *See Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) ("A manner of lessening the prejudice from the extraneous offense is to give a limiting instruction to the jury."). The second factor thus weighs only slightly against admission or is neutral.

The third factor focuses on the time needed "to develop the evidence, during which the jury [is] distracted from consideration of the indicted offense." *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005). Evidence that consumes an inordinate amount of time to present or answer, for example, may confuse or distract the jury from the main issues. *See Gigliobianco*, 210 S.W.3d at 641.

The State acknowledges the time spent at trial on extraneous sexual assaults was not insignificant. The State's case in chief took two days and is transcribed in about 600 pages. L.C.'s testimony about the charged offense occupies about eighty

13

of those pages. Collectively, L.Z.'s, A.Z.'s, and M.G.'s testimony is almost double the number of pages, or roughly twenty-five percent of the entire transcript. And they were not the only witnesses to testify about the other sexual assaults. For instance, experts testified about the forensic interviews and medical examinations of the other children. It is fair to say that a significant portion of the trial—at least one-quarter to one-third—was spent on the extraneous sexual assaults. Because a significant portion of the evidence related to the extraneous sexual assaults, we conclude the third factors weighs against admission. *See McGregor v. State*, 394 S.W.3d 90, 121–22 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (factor weighed in favor of exclusion when evidence of extraneous offenses amounted to one-third of the trial); *Newton v. State*, 301 S.W.3d 315, 321 (Tex. App.—Waco 2009, pet. ref'd) (factor weighed in favor of exclusion when evidence of extraneous offenses was twenty-seven percent of trial testimony).

On the fourth factor, the State showed great need for the extraneous-offense evidence. In adopting Article 38.37, the Legislature recognized "there is typically very little evidence to assist prosecutors with proving" child sex offenses. *Bradshaw v. State*, 466 S.W.3d 875, 884 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg. R.S. (2013)). Child victims may be "so scarred by the physical and emotional trauma of the event that there are often long delays in the reporting of the crime, and these

delays can lead to the destruction or deterioration of what little physical evidence exists." *Id.* That dynamic played out here.

The ultimate issue was whether Juarez committed the charged offense of continuous sexual abuse of a young child against L.C. L.C. did not tell anyone about her allegations until 2018, more than eight years after the abuse started and about four years after it ended. There was no physical evidence or DNA evidence to support the charged offense because of the time that had passed. Although L.C.'s uncle witnessed something "confusing" between Juarez and L.C., Juarez strongly contested both L.C.'s and her uncle's credibility, making the extraneous offenses necessary to counter his theory that the allegations were fabricated. The fourth factor thus weighs in favor of admissibility.

Considering all four factors together under the abuse-of-discretion standard, we cannot say the trial court's decision to admit the evidence of the extraneous offenses against L.Z., A.Z., and M.G. fell outside the zone of reasonable disagreement. *See Schiele v. State*, No. 01-13-00299-CR, 2015 WL 730482, at *8 (Tex. App.—Houston [1st Dist.] Feb. 19, 2015, pet. ref'd) (mem. op., not designated for publication) (trial court did not abuse its discretion by admitting extraneous-offense evidence when one half of the Rule 403 factors weighed against admissibility and the other half weighed in favor of it).

We overrule Juarez's second issue.

15

## IV. Conclusion

We affirm the trial court's judgment.


Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).