# Court of Appeals
## Tenth Appellate District of Texas

### 10-25-00003-CR

Dana Loment Pettigrew,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
85th District Court of Brazos County, Texas
Judge Kyle Hawthorne, presiding
Trial Court Cause No. 23-01989-CRF-85

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

After a jury trial, Dana Loment Pettigrew was convicted of one count of indecency with a child by contact and one count of indecency with a child by exposure committed against A.S. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), (a)(2).[1] Three of Pettigrew's appellate issues address the extraneous-offense

---

[1] The jury, finding one felony enhancement paragraph to be "true," assessed his punishment at forty-five years in prison with a $10,000 fine and twenty years in prison with a $10,000 fine, respectively.

testimony of L.H., which was admitted under article 38.37, section 2(b) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). He argues that article 38.37 was unconstitutional as applied to him, that the trial court erred by overruling his Rule 403 objection to the extraneous testimony, and that the article 38.37 jury charge instruction was erroneous. In his fourth issue, Pettigrew claims that his trial counsel's failure to request to reopen evidence during the guilt-innocence phase prevented him from exercising his constitutional right to testify and entitles him to a new trial. We affirm.

## As-Applied Constitutional Challenge

In his first issue, Pettigrew makes an as-applied constitutional challenge to L.H.'s extraneous-offense testimony pursuant to article 38.37, section 2(b) of the Code of Criminal Procedure, specifically asserting a violation of his right to due process under the United States Constitution and to due course of law under the Texas Constitution. *Id.*; U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. We disagree.

RELEVANT FACTS

The trial court held a hearing outside of the jury's presence to determine the admissibility of extraneous-offense testimony from L.H. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. L.H. was thirty-five years old at the time

of trial. She explained that when she was thirteen or fourteen years old, she moved into Pettigrew's residence in Ohio. She testified that Pettigrew came into her bedroom one night and got on top of her. L.H. described how Pettigrew sucked on her neck and her breasts and put his hand inside of her pants. She stated that after Pettigrew went into the kitchen to get a cigarette, he told her that "what happened made him sober up."

Pettigrew's trial counsel conceded that L.H.'s testimony met the requirements for admissibility under article 38.37. However, he objected to its admission under Rules of Evidence 403, 404(b), and 405, and argued that the testimony violated Pettigrew's rights under the United States and Texas Constitutions to due process and to a fair and impartial jury. *See* U.S. CONST. amends. V, VI, XIV; TEX. CONST. art. I, §§ 13, 15, 19; TEX R. EVID. 403, 404(b), 405. The trial court overruled Pettigrew's statutory and constitutional objections, specifically finding that the probative value of L.H.'s testimony was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

ANALYSIS

A statute may be challenged as unconstitutional either "on its face" or "as applied." *McCain v. State*, 582 S.W.3d 332, 346 (Tex. App.—Fort Worth 2018, no pet.). Under either type of challenge, we begin with the presumption

that the Legislature acted both rationally and validly in enacting the law under review.  *See Estes v. State*, 546 S.W.3d 691, 698 (Tex. Crim. App. 2018).  In an as-applied constitutional challenge, the appellant "concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances."  *Id.*  The party challenging the statute has the burden to establish its unconstitutionality.  *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013).

Pettigrew acknowledges that the courts of appeals, including this Court, have held that article 38.37, section 2(b) is facially constitutional, satisfying due process because of the procedural protections set forth in article 38.37, sections 2-a and 3, along with the requirement that the trial court conduct a Rule 403 balancing test.  *See Gates v. State*, No. 10-15-00078-CR, 2016 WL 936719, at *4 (Tex. App.—Waco Mar. 10, 2016, pet. ref'd) (mem. op., not designated for publication).  In his as-applied challenge to the statute, he does not contend that these procedural processes did not occur in this case; rather, he claims that they have proven "illusory" because L.H.'s allegation was "uncorroborated, twenty years removed from its alleged occurrence and not reported to the police[,]" and was found to be unsubstantiated by the child protection agency that investigated the allegations in Ohio.

The State notes that this Court has twice considered and rejected virtually identical as-applied challenges to article 38.37, section 2(b). *See Deggs v. State*, 646 S.W.3d 916, 921-24 (Tex. App.—Waco 2022, pet. ref'd); *Gonzales v. State*, No. 10-21-00294-CR, 2022 WL 3453138, at *5-6 (Tex. App.—Waco Aug. 17, 2022, pet. ref'd) (mem. op., not designated for publication).[2] Here, as in those cases, the trial court followed article 38.37, section 2-a's requirements and determined, after hearing evidence and the arguments of counsel, that the evidence was sufficient for a reasonable juror to find that Pettigrew committed the extraneous offense beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. Though Pettigrew takes issue with the trial court's ultimate decision to admit the evidence despite affording the procedural protections outlined above, we do not find that article 38.37, section 2(b) is unconstitutional as applied to him.

Accordingly, we overrule Pettigrew's first issue.

## Rule 403

Pettigrew asserts in his second issue that the trial court should have excluded L.H.'s testimony under Rule 403 of the Rules of Evidence. *See* TEX. R. EVID. 403; *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). We disagree.

---

[2] Appellate counsel in this case was also appellate counsel in each of those cases.

STANDARD OF REVIEW AND RELEVANT LAW

We review the trial court's decision to admit contested testimony under an abuse of discretion standard. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We will uphold the trial court's decision if it is within the zone of reasonable disagreement. *Id.*

The admission of evidence under article 38.37 is limited by Rule 403's balancing test. *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd). Rule 403 allows the exclusion of relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. TEX. R. EVID. 403.

When conducting a Rule 403 balancing test, trial courts should consider: (1) the evidence's probative force; (2) the proponent's need for the evidence; (3) the evidence's potential to suggest a decision on an improper basis; (4) the evidence's tendency to distract the jury from the main issues; (5) any tendency for the jury to give the evidence undue weight because it has not been fully equipped to evaluate the evidence's probative force; and (6) the likelihood that presenting the evidence will consume an inordinate amount of time. *See Gigliobianco*, 210 S.W.3d at 641-42.

ANALYSIS

All testimony and physical evidence will likely be prejudicial to one party or the other. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). We presume that the probative value of relevant evidence exceeds any danger of unfair prejudice, and it is only when there exists a "clear disparity" between the degree of prejudice of the evidence offered and its probative value that Rule 403 is applicable. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

As to the first factor, evidence of a separate sexual offense against a child is probative of a defendant's character or propensity to commit sexual assaults on children. *See Deggs*, 646 S.W.3d at 925-26. Pettigrew acknowledges that the probative value of L.H.'s testimony is "self-evident." He argues, however, that the remoteness of L.H.'s allegation lessened its probative value. The trial court reasonably could have found that the remoteness of the extraneous allegation did not so significantly weaken the probative value of the evidence as to favor its exclusion. *See id.* The extraneous-offense testimony was substantially similar to one of the charged offenses committed against A.S. Each complainant described Pettigrew entering their bedroom, licking their breasts, and touching their vagina underneath their clothes. Both L.H. and A.S. testified that when Pettigrew stopped touching them, he claimed that he

was drunk. Further, L.H. and A.S. were nearly the same age when the alleged offenses occurred. We find that this factor weighs in favor of admission.

Regarding the second factor, Pettigrew asserts that the State's need for the extraneous-offense evidence was diminished because three expert witnesses testified to corroborate A.S.'s testimony. The State points out that the expert witness testimony was limited to general observations and opinions about whether A.S.'s behavior was "consistent with" being a victim of child sexual abuse and did not factually corroborate her allegations. As such, according to the State, this remained a "he said, she said" case with a great need for L.H.'s factually-similar extraneous-offense testimony. Considering the lack of factually corroborating evidence, coupled with Pettigrew's defensive theory that A.S. lied about Pettigrew's sexual abuse in order to save herself and her mother from his ongoing physical abuse, we agree with the State that the second factor weighs in favor of admitting the extraneous-offense testimony.

Both parties acknowledge that the inherently inflammatory nature of extraneous sexual offenses against children tends to suggest a verdict on an improper basis, leading the third factor to weigh against admission. *See id.* at 926. We agree.

Pettigrew contends that the State distracted the jury from the main issues in the case through the following statement in its final argument:

> I'll tell you why we brought [L.H.]: We reviewed those records, we reviewed that case, we spoke with [L.H.], and we believed her. She did not get the justice she deserved 19 years ago. She was not treated fairly until yesterday when she finally had the opportunity to sit here and tell you what happened to her. That is why we brought you [L.H.].

The State explains that this statement was in response to a portion of Pettigrew's closing argument in which he contended that the State presented L.H.'s testimony despite disbelieving her allegation. Regardless, the trial court mitigated any tendency of the extraneous-offense evidence to confuse or distract the jury through its article 38.37 instruction in the jury charge.[3] The jury instruction expressly reminded the jury that Pettigrew was not on trial for the offense against L.H. and explained the purposes for which her testimony could be considered in resolving the ultimate issue of whether Pettigrew committed the charged offenses. The fourth factor weighs in favor of admission.

Regarding the fifth factor, "the evidence in question was neither scientific nor technical and pertained to matters including victim credibility

---

[3] The entirety of the article 38.37 instruction is included in our analysis of Pettigrew's third issue, in which he attacks the propriety of including the instruction in the jury charge.

that could easily be understood by a jury." *Deggs*, 646 S.W.3d at 927. This factor weighs in favor of admission.

Finally, Pettigrew complains that L.H.'s testimony consumed almost as much time as A.S.'s testimony in front of the jury. As such, he argues that this factor weighs against admission. The State responds that L.H.'s testimony comprised approximately fifteen percent of the total testimony in front of the jury. In our review of the record, we cannot say that the extraneous-offense evidence consumed such an inordinate amount of time that exclusion was warranted.

In light of our standard of review, our resolution of each factor above, and the presumption of admissibility, we conclude that the trial court did not abuse its discretion by overruling Pettigrew's Rule 403 objection. Accordingly, we overrule Pettigrew's second issue.

## Jury Charge Instruction

In his third issue, Pettigrew argues that the trial court's article 38.37 jury instruction constituted an impermissible comment on the weight of the evidence. We disagree.

STANDARD OF REVIEW

We review a claim for jury charge error using the two-step procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). We first

consider whether error occurred, and if so, whether sufficient harm occurred to justify a reversal. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

RELEVANT FACTS

The trial court's article 38.37 instruction in the jury charge stated:

During the trial, you heard evidence that the defendant may have committed an offense against L.H. other than the ones the defendant is currently accused of in the indictment. You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the offense against L.H. Those of you who believe beyond a reasonable doubt the defendant committed that extraneous offense may consider it.

You may consider this evidence for any bearing this evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant. Even if you consider it, however, the defendant is not on trial for any offenses not alleged in the indictment.

During the charge conference, Pettigrew objected to the instruction's wording because he believed "38.37 requires a unanimous decision by the entire jury that the extraneous act occurred before the jury can use it at all." The trial court overruled the objection. Pettigrew added that he wanted to "incorporate all the objections that I made after the 38.37 hearing[.]" The trial court also overruled those objections.

ANALYSIS

Because extraneous-offense evidence admitted under article 38.37 may be used for "any bearing the evidence has on relevant matters," Pettigrew appears to contend that the article 38.37 instruction was unnecessary. *See* TEX. CODE CRIM. PROC. ANN. art 38.37, § 2(b). As such, he claims that the instruction inappropriately highlighted L.H.'s testimony and constituted an improper comment on it. However, a trial court does not err by including an article 38.37 instruction where the instruction is raised by the evidence and is correctly stated. *See Esparza v. State*, 513 S.W.3d 643, 648 (Tex. App.—Houston [14th Dist.] 2016, no pet.). L.H.'s testimony was admitted pursuant to article 38.37, section 2(b), and the trial court's instruction substantially tracked the appropriate statutory language. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b).

Alternatively, Pettigrew singles out the sentence, "Those of you who believe beyond a reasonable doubt the defendant committed that extraneous offense may consider it," and complains that by failing to include qualifying language (i.e., "if any"), the instruction inappropriately assumed that some of the jurors would believe L.H.'s testimony beyond a reasonable doubt. Taking the sentence in context with the instruction as a whole, we disagree with Pettigrew's characterization. The jurors were specifically instructed that they

were not permitted to consider the evidence that Pettigrew "may have" committed an offense against L.H. "at all, unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the offense against L.H." The instruction is not a comment on the weight to be given L.H.'s extraneous-offense testimony. We find no error in the trial court's inclusion of the instruction. Accordingly, we overrule Pettigrew's third issue.

## Denial of Right to Testify

In his final issue, Pettigrew argues that he is entitled to a new trial because his trial counsel prevented him from exercising his right to testify during the guilt-innocence phase of trial. We disagree.

RELEVANT FACTS

Pettigrew initially elected not to testify during the guilt-innocence phase. Outside of the jury's presence, before the defense rested its case, Pettigrew gave sworn testimony about his decision. After the charge conference, the trial court recessed the proceedings for the day.

The next morning, after the jury retired to deliberate, Pettigrew informed the trial court that he changed his mind about testifying. Pettigrew stated, "I told [trial counsel] this morning - - I told him earlier. I'm asking you: Am I allowed to testify? I changed my mind." The trial court responded, "Sir,

the jury is deliberating. You can talk with your attorney about that." The jury subsequently found Pettigrew guilty as charged.

Pettigrew testified at the punishment phase of trial. He denied inappropriately touching A.S. and exposing himself to her.

After Pettigrew was sentenced, his appellate counsel filed a motion for new trial. The trial court held a hearing on the motion, at which Pettigrew's trial counsel was the only witness.[4] At the hearing (and in an affidavit attached to the motion), Pettigrew's trial counsel attested that Pettigrew told him that he had changed his mind about testifying during the guilt-innocence phase before the trial court read the charge to the jury. Trial counsel believed that it was too late for Pettigrew to change his mind and did not request to reopen the evidence before the charge was read. He conceded in his affidavit that he "made a mistake by not approaching the bench concerning [Pettigrew's] wish to testify[.]"

Regarding prejudice, Pettigrew's trial counsel also opined that, based on "many months of working with Mr. Pettigrew and his testimony proffered during the punishment phase of trial[,]" as well as several of the State's witnesses presenting "credible and compelling" testimony for the jury's

---

[4] A different judge presided over the motion for new trial. The original trial judge voluntarily recused himself from hearing the motion for new trial after it was filed.

consideration, he did not believe there existed a reasonable probability of a different result if Pettigrew had testified during guilt-innocence.

The trial court denied the motion for new trial.

STANDARD OF REVIEW AND RELEVANT LAW

We apply the *Strickland* framework to an allegation that a defendant's right to testify was denied by defense counsel.[5] *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An appellant must show by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense such that there is a reasonable probability that the result of the proceeding would have been different. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

ANALYSIS

The State does not contest that trial counsel failed to protect Pettigrew's right to testify by not requesting to reopen the evidence. Our analysis, therefore, focuses on the prejudice prong of *Strickland*.

To show prejudice from professional errors during the guilt-innocence phase, a defendant must prove that there was a reasonable probability that,

---

[5] Pettigrew asserts that the *Johnson* framework should be re-evaluated. However, we are bound to follow the precedent of the Court of Criminal Appeals. *See State v. Newton*, 721 S.W.3d 339, 340 (Tex. Crim. App. 2025).

but for his attorney's professional errors, the jury would have had a reasonable doubt about his guilt. *See Perez v. State*, 310 S.W.3d 890, 893-94 (Tex. Crim. App. 2010). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome, meaning counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). While we review the ultimate question of prejudice under a *de novo* standard, we afford deference to the trial court's historical fact determinations. *Johnson*, 169 S.W.3d 239. When, as here, the trial court does not make express findings of fact, we imply fact findings that support the trial court's ruling as long as those findings are reasonable and supported by the record. *Id.*

In his prejudice analysis, Pettigrew points out that by not testifying in guilt-innocence, he was unable to personally address A.S.'s motive to lie about the offenses charged and to refute L.H.'s extraneous-offense testimony.[6] As support for his argument, he notes that the jury was temporarily deadlocked on a punishment decision and he attributes that impasse to his decision to testify during that phase and deny the charges.

---

[6] In Pettigrew's affidavit attached to his motion for new trial, he explained that he changed his mind about testifying because he "decided [he] needed to face the jury and let them hear [him] deny these false claims."

We find that Pettigrew has not met his burden to demonstrate prejudice from the denial of his right to testify. His argument that the jury's temporary deadlock on punishment was due to his testimony denying the allegations – let alone that it suggests that the jury would have had a reasonable doubt about his guilt – is based on assumptions unsupported by evidence in the record. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Accordingly, we overrule Pettigrew's fourth issue.

<strong>Conclusion</strong>

Having overruled all of Pettigrew's issues on appeal, we affirm the judgments of the trial court.

_____

STEVE SMITH
Justice

OPINION DELIVERED and FILED: April 16, 2026

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
Do not publish
CRPM

